Duane REUTTER and Patty
Reutter, Plaintiffs

v.

Kevin WEBER, M.D.; Matthew Sumpter,
M.D.; and Pueblo Cardiology Associates,
P.C., Defendants.

No. 06SA79.

Supreme Court of Colorado,
En Banc.

April 30, 2007.

Leventhal Brown & Puga, P.C., Jim Leventhal, Timothy G. Buxton, Benjamin Sachs, Denver, Colorado, Attorneys for Plaintiffs.

White and Steele, P.C., John M. Palmeri, Kimberly F. Wells, John M. Lebsack, Denver, Colorado, Attorneys for Defendant Kevin Weber, M.D.

Tiemeier and Hensen, P.C., Steven J. Hensen, Denver, Colorado, Attorneys for Defendant Matthew Sumpter, M.D.

Pryor Johnson Carney Karr Nixon, P.C., Elizabeth C. Moran, Aaron P. Bradford, Greenwood Village, Colorado, Attorneys for Defendant Pueblo Cardiology Associates, P.C.

Martin Conklin, P.C., John L. Conklin, Denver, Colorado, Attorneys for Amicus Curiae Kaiser Foundation Health Plan of Colorado.

Patrick T. O'Rourke, Special Assistant Attorney General, Budman Mastin & Hershey, LLC, Kari M. Hershey, Denver, Colorado, Attorneys for Amicus Curiae the University of Colorado.

Kennedy Childs & Fogg, P.C., John R. Mann, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers' Association.

Law Offices of John Robert Holland, P.C., John Robert Holland, Anna Cayton–Holland, Law Offices of J.M. Reinan, P.C., Jerome M. Reinan, Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Justice EID delivered the Opinion of the Court.

Plaintiffs Duane and Patty Reutter have sued Drs. Kevin Weber and Matthew Sumpter and Pueblo Cardiology Associates, P.C. (collectively, "Defendants") for malpractice based on what they allege to have been negligent medical treatment given to Mr. Reutter in January 2002. In this original proceeding, the Reutters seek relief from a trial court order allowing Defendants to interview on an informal basis other medical providers who were involved in Mr. Reutter's treatment but who are not parties to this suit. Under the trial court's ruling, these interviews would be permitted to take place outside the Reutters' presence.

We now hold that the trial court was correct when it ruled that the Reutters were not entitled to attend the interviews in question. The physician-patient privilege is inapplicable to information relevant to the Reutters' malpractice action because it is subject to a

statutory exception to the privilege. This exception covers information acquired by medical providers who, like the non-party providers in this case, acted "in consultation with" other medical providers who have been sued for malpractice. § 13–90–107(1)(d)(II), C.R.S. (2006). We disagree with the Reutters' argument that, under our decision in *Samms v. District Court*, 908 P.2d 520 (Colo. 1995), they are entitled to attend the interviews in order to protect medical information not relevant to their malpractice action—that is, residually privileged information. *Samms* did not create a blanket rule that a plaintiff is always entitled to attend an interview of a non-party medical provider. Instead, it held that the trial court should take appropriate measures to protect against the divulgement of residually privileged information, and that allowing the plaintiff to attend the interview is the preferred measure where there is a high risk that residually privileged information will be divulged. Here, by contrast, the medical providers were "in consultation with" each other in a unified course of treatment— a course of treatment that forms the basis of the malpractice action. In this sort of situation, the risk that residually privileged information will be divulged is relatively low. Where, as here, the non-party medical providers do not possess residually privileged information, the trial court does not abuse its discretion by refusing to require that the plaintiff be permitted to attend the interviews of those non-party medical providers. Accordingly, we discharge the rule to show cause.

## I.

On January 14, 2002, Duane Reutter arrived at the emergency room of St. Mary Corwin Medical Center complaining of chest pain and difficulty breathing. He was initially examined by the attending physician, Defendant Weber, who recognized his cardiac symptoms and sought advice from Defendant Sumpter, a cardiologist. Sumpter immediately decided to perform an angiogram, which required intubation due to Mr. Reut-

ter's shortness of breath. Weber attempted to intubate Mr. Reutter, but was unsuccessful. Weber then contacted Scott Mantel, an anesthesiologist, who performed the intubation. Another cardiologist, George Gibson, performed the angiogram. All of these events happened within a short period of time on January 14.

Once the angiogram was completed, Sumpter consulted with a critical care specialist, Greg Shapiro, for Mr. Reutter's continuing treatment at St. Mary Corwin. Mr. Reutter was transferred to the hospital's critical care unit, where he remained for the next three days. Mr. Reutter continued to have difficulty breathing and could not be removed from the ventilator while under Shapiro's care. Nurses and respiratory therapists assisted in Mr. Reutter's treatment. Four days after arriving at St. Mary Corwin, Mr. Reutter was transferred to the Veterans Administration Medical Center. Doctors there determined that Mr. Reutter suffered a brain injury resulting from oxygen deprivation.

The Reutters sued Defendants for medical malpractice stemming from Mr. Reutter's hospitalization at St. Mary Corwin.[1] Defendants subsequently filed a motion requesting the trial court's permission to conduct interviews with Shapiro and Mantel, as well as the non-registered nurses and respiratory therapists who treated Mr. Reutter at St. Mary Corwin (collectively, the "Medical Witnesses"). Defendants sought to hold these interviews without the Reutters or their attorneys in attendance. The Reutters opposed Defendants' motion on grounds that the information acquired by the Medical Witnesses in the course of treating Mr. Reutter was privileged and in addition, under this court's decision in *Samms*, they were entitled to attend all interviews of non-party medical providers.

The trial court granted Defendants' motion on grounds that the physician-patient privilege was inapplicable to the Medical Witnesses because they were "in consultation

---

1. In addition to Defendants, the Reutters originally sued Mantel, Shapiro and St. Mary Corwin. The Reutters subsequently dismissed their claims against Mantel and Shapiro and the trial court dismissed their claims against St. Mary Corwin. The Reutters have sued Pueblo Cardiology Associates because it employs Sumpter and Gibson.

with" Defendants and therefore excluded from the physician-patient privilege under section 13–90–107(1)(d)(II), C.R.S. (2006). In a motion to reconsider, the Reutters claimed for the first time that they were entitled to attend the interviews because the Medical Witnesses may have acquired "residually privileged information" while treating Mr. Reutter, i.e., medical information about Mr. Reutter that was unrelated to the course of treatment at St. Mary Corwin forming the basis of the malpractice action. At a hearing on the Reutters' motion to reconsider, the trial court asked the Reutters' counsel about the possibility of residually privileged information. Counsel was unable to provide any factual basis for the claim that the Medical Witnesses may have obtained residually privileged information, and the trial court denied the Reutters' motion to reconsider.

We issued a rule to show cause to determine whether the trial court was correct to grant Defendants' motion to conduct interviews with the Medical Witnesses.

## II.

Our holding in this case takes two parts. First, we agree with the trial court that information relevant to this lawsuit acquired by the Medical Witnesses while treating Mr. Reutter is subject to the statutory exception to the physician-patient privilege set forth in section 13–90–107(1)(d)(II). Here, the Medical Witnesses were "in consultation with" Defendants when they participated in a unified course of treatment for Mr. Reutter at St. Mary Corwin, and therefore the information they acquired in the course of that treatment and relevant to this lawsuit is not covered by the physician-patient privilege. Second, *Samms* does not create a blanket rule that entitles a plaintiff to attend any interview with a non-party medical provider regardless of the circumstances. Rather, when a non-party medical provider is "in consultation with" a sued provider in a unified course of treatment—a course of treat-

ment that forms the basis of the malpractice action—the risk of residual privilege is relatively low. Where, as here, the trial court determines that the non-party medical providers possess no residually privileged information, the trial court does not abuse its discretion by refusing to require that the plaintiff be permitted to attend the interviews. We therefore discharge the rule.

### A.

Communications between physicians and their patients generally are privileged under Colorado law. Protecting these communications from disclosure promotes "effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation" that could result from divulging her medical information. *Alcon v. Spicer*, 113 P.3d 735, 738 (Colo.2005) (internal quotations omitted). To this end, the General Assembly codified the physician-patient privilege in the Colorado Revised Statutes:

A physician, surgeon, or registered professional nurse ... shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient....

§ 13–90–107(1)(d), C.R.S. (2006).

The General Assembly also has codified two circumstances where information acquired by a medical provider is *not* privileged. First, the privilege does not prevent a medical provider who is sued for malpractice from disclosing confidential medical information concerning the subject matter of the plaintiff's suit.[2] *See* § 13–90–107(1)(d)(I). This exception avoids the unfairness of allowing a patient to use privileged information to assert a medical malpractice claim while simultaneously preventing the sued medical provider from using the same information in its defense. *Cf. Johnson v. Trujillo*, 977 P.2d 152, 157 (Colo.1999); *Clark v. Dist. Court*, 668 P.2d 3, 10 (Colo.1983).

---

**2.** Defendants argue that Mantel and Shapiro fall within the "is sued" exception to the physician-patient privilege because the Reutters originally named them as defendants, but they were dismissed in an amended complaint. As explained in this section of our opinion, we find that Man-

tel and Shapiro were "in consultation" with Defendants and thus subject to the exception to the physician-patient privilege set forth in section 13–90–107(1)(d)(II). Consequently, we do not address Defendants' alternative argument under section 13–90–107(1)(d)(I).

Second, the statutory privilege does not apply to a medical provider *"who was in consultation with* a physician, surgeon, or registered professional nurse being sued ... on the case out of which said suit arises." § 13–90–107(1)(d)(II) (emphasis added). Defendants argue, and the trial court agreed, that the Medical Witnesses are subject to this exception because Defendants were "in consultation with" the Medical Witnesses in the course of Mr. Reutter's treatment at St. Mary Corwin. It is this statutory exception that occupies our attention, and the Reutters bear the burden of establishing that the exception is inapplicable. *See Alcon,* 113 P.3d at 739 ("The claimant of the privilege bears the burden of establishing the applicability of the privilege.").

The meaning of the statutory phrase "in consultation with" is a question of first impression under Colorado law. We begin by looking at the plain meaning of the term "consultation." *See Danielson v. Dennis,* 139 P.3d 688, 691 (Colo.2006). The Reutters argue that the plain meaning of "consultation" limits the exception to those medical providers who only offer advice to treating physicians, and does not extend to providers (like the Medical Witnesses) who offer advice as well as actually treat the plaintiff-patient.

We believe that the Reutters' narrow definition of "consultation" is inconsistent with both the meaning of that term and the overall structure of section 13–90–107(1)(d). The term "consultation" is defined as "[t]he act of asking the advice or opinion of someone," or more generally, "[a] meeting in which parties consult or confer." *Black's Law Dictionary* 311 (7th ed.1999). This definition is consistent with our use of the term "consultation" in the physician-patient context. *See, e.g., Hartmann v. Nordin,* 147 P.3d 43, 53 (Colo. 2006) (using the term "consultation" to describe a patient's communications with doctors and nurses); *Hoffman v. Brookfield Republic, Inc.,* 87 P.3d 858, 861 (Colo.2004) (same). There is nothing in the meaning of "consultation," however, that excludes the taking of other actions. In other words, a medical provider who actually treats a patient can also consult with others who are providing treatment.

The overall structure of section 13–90–107(1)(d) supports this broader definition of "consultation" as well. By defining the scope of the exception to include *both* the sued provider *and* those who acted in consultation with her, section 13–90–107(1)(d) recognizes that medicine is not necessarily practiced alone, but rather in many cases may be practiced in a collaborative fashion with other practitioners. While one physician might be the primary medical provider, other medical providers typically play a role in the patient's treatment. In many instances, the primary physician could not act without the advice, knowledge, and special skills of these other practitioners.

Other courts have defined "consultation" in the medical context in a similar fashion. The Iowa Supreme Court, for example, has described "consulting physicians" as those physicians engaged in a "unified course of treatment," but excluded physicians "acting independently and successively on the same injury or illness...." *Brown v. Guiter,* 256 Iowa 671, 128 N.W.2d 896, 903 (Iowa 1964). Similarly, the South Dakota Supreme Court considers consultation between multiple physicians to be a "unitary affair," such that there was consultation when a physician treated the patient "during the time [the defendant doctors] were ministering to him," but not after the patient had been treated by such doctors. *Hogue v. Massa,* 80 S.D. 319, 123 N.W.2d 131, 135 (1963); *see also Doll v. Scandrett,* 201 Minn. 316, 276 N.W. 281, 283 (1937) (defining consultation as a "unitary affair").

The "unified course of treatment" analysis adopted by other jurisdictions adequately captures the meaning of "consultation" in section 13–90–107(1)(d)(II). Under this analysis, medical providers are "in consultation with" one another if they collectively and collaboratively assess and act for a patient by providing a unified course of medical treatment.

Applying this analysis to the Reutters' case, we find that the collaborative effort between Defendants and the Medical Witnesses in treating Mr. Reutter was a unified course of treatment. When Mr. Reutter arrived at St. Mary Corwin, he suffered from

chest pain and difficulty breathing. In order to assess these symptoms using an angiogram, Weber called on Mantel's skills as an anesthesiologist to intubate Mr. Reutter. Mantel's involvement in the case was limited to intubating Mr. Reutter. After the angiogram, Sumpter asked Shapiro to continue to evaluate Mr. Reutter's symptoms—particularly his difficulty breathing—in the critical care unit. Sumpter did so, and nurses and respiratory therapists contributed to this line of treatment.[3]

The unified course of treatment for Mr. Reutter offered by Defendants and the Medical Witnesses meets the definition of "in consultation with" under section 13–90–107(1)(d)(II), and therefore any privilege that applies to the information acquired by the Medical Witnesses relevant to this suit is subject to the statutory exception. The trial court correctly held that the physician-patient privilege does not apply to information acquired by the Medical Witnesses concerning the course of treatment that is the basis for the Reutters' claims against Defendants.

### B.

■■■■ The Reutters contend that, even if information relevant to this lawsuit acquired by the Medical Witnesses is excluded from the physician-patient privilege by operation of section 13–90–107(1)(d)(II), Defendants still must provide the Reutters with notice and an opportunity to attend Defendants' informal interviews. To support this argument, the Reutters rely on our decision in *Samms v. District Court,* 908 P.2d 520 (Colo. 1995). We disagree with the Reutters' interpretation of *Samms. Samms* did not create a blanket rule that a plaintiff is always entitled to attend interviews of non-party medical providers. Instead, it held that the trial court should take appropriate measures to protect against the divulgement of residually privileged information in the course of discovery, which would include allowing the

plaintiff to attend the defendant's interviews with non-party medical providers where the risk is high that residually privileged information will be divulged in those interviews. Here, by contrast, the medical providers were "in consultation with" each other in a unified course of treatment—a course of treatment that forms the basis of the malpractice action. In this sort of situation, the risk that residually privileged information will be divulged is relatively low. Where, as here, the non-party medical providers do not possess residually privileged information, the trial court does not abuse its discretion by refusing to require that the plaintiff be permitted to attend the interviews of those non-party medical providers.

Like this case, *Samms* concerned a malpractice defendant's request to conduct interviews with non-party medical providers who treated the plaintiff. But unlike this case, *Samms* did not involve a plaintiff-patient who had been treated by medical providers "in consultation with" a sued provider in a unified course of treatment; rather, the plaintiff-patient there had been treated by twenty different physicians offering separate medical advice and administering separate courses of treatment. *See* 908 P.2d at 523–24. We therefore had no opportunity in *Samms* to consider the "in consultation with" exception to the physician-patient privilege, nor did we consider the issue of residual privilege in such a situation.

In *Samms,* the privilege covering the patient's communications with the twenty physicians had been waived only "with respect to information related to her heart condition obtained by [each] physician in the course of diagnosing or treating [her] for that condition [that was the subject of her malpractice action]." *Id.* at 524. We recognized that the plaintiff had an interest in protecting any residually privileged information held by non-party medical witnesses, i.e., privileged information that was not relevant to the mal-

---

**3.** We recognize that there is a dispute over whether the privilege described in section 13–90–107(1)(d) is limited to physicians, surgeons and registered nurses or whether the statutory privilege also includes other medical providers such as non-registered nurses and respiratory therapists. We need not resolve this question today

because the Medical Witnesses (including the non-registered nurses and respiratory therapists) would be subject to the "in consultation with" exception to the physician-patient privilege set forth in section 13–90–107(1)(d)(II), as we have held in this section.

practice action. *Id.* at 525. We also noted that, in some instances, the waiver of the physician-patient privilege resulting from filing the medical malpractice action might cover virtually all that was discussed between a physician and patient. *Id.* In other cases, it might cover only a small portion of what was discussed. In such instances, "some or all of such discussions will remain subject to the privilege." *Id.* The facts of *Samms* clearly fell within this latter category. Indeed, in an order governing the interview procedures in the case, the trial court noted that the interviews might involve "a 'reasonable probability of disclosure of material which may be privileged. . . .' " *Id.* at 523. Under these circumstances, we concluded that a malpractice defendant must give notice to the plaintiff-patient that she intends to interview the non-party providers—notice that would "afford a plaintiff or the plaintiff's attorney an opportunity to attend any scheduled interview" in order to protect against the disclosure of residually privileged information. *Id.* at 526.

■ Our conclusion in *Samms* thus does not impose the blanket rule put forward by the Reutters—namely, that the plaintiff-patient must be given the opportunity to attend interviews with non-party medical providers under any and all circumstances. Instead, *Samms* holds that the trial court must take appropriate measures to protect against the divulgement of residually privileged information. Where the risk that residually privileged information will be divulged during an interview is relatively high, the preferred method of protecting against divulgement is to provide the plaintiff-patient with prior notice and an opportunity to attend the interview. *See id.* at 526.

The facts of this case do not fall within the purview of *Samms*. Here, as discussed above, the Medical Witnesses were "in consultation with" the sued providers in administering a unified course of treatment. Under section 13–90–107(1)(d)(II), the privilege does not apply to medical information relevant to this course of treatment. The question then becomes whether the Medical Witnesses possess residually privileged information not relevant to the course of treatment. The an-

swer to that question in this case, unlike in *Samms*, is no. As an initial matter, we note that when medical providers are "in consultation with" a sued provider in administering a unified course of treatment, and that course of treatment forms the basis of the malpractice action, the risk that residually privileged information will be divulged in an interview is much lower than in the *Samms* scenario, where twenty medical providers administered separate treatments over what appears to have been a significant period of time. The facts of this case illustrate the point.

One of the Medical Witnesses, Scott Mantel, treated Mr. Reutter on one brief occasion and only for the purpose of intubating him. The remaining Medical Witnesses treated Mr. Reutter continually over a three-day period following his angiogram at St. Mary Corwin. There is no evidence that these Medical Witnesses acquired any privileged information during this time that would be irrelevant to the malpractice action. Indeed, when pressed by the trial court below and by this court at oral argument, the Reutters were unable to provide any factual basis to support their claim that the Medical Witnesses had acquired residually privileged information when treating Mr. Reutter at St. Mary Corwin. Thus, the facts here fall within the category of cases described in *Samms* in which virtually all information obtained by medical providers is relevant to the malpractice action. *See Samms*, 908 P.2d at 525.

■ We appreciate that the existence of residually privileged information acquired by non-party medical providers is not demonstrable in the same way that documents recorded on a privilege log can be. *Cf. Alcon*, 113 P.3d at 742 (holding that purportedly privileged medical records should be recorded on a privilege log). If the trial court chooses to consider whether to permit an interview without the presence of the plaintiff, it should assess the risk that there is residually privileged information, taking into account not only the evidence offered by the plaintiff-patient, but also the circumstances of the plaintiff-patient's treatment and the likelihood that those circumstances could give rise to residually privileged information.

Defendants complied with the notice requirement of *Samms* by filing their motion requesting permission to interview the Medical Witnesses, thereby giving the trial court the opportunity to evaluate the facts and make a conclusion about the likelihood of residually privileged information and the appropriate measures needed to protect against its divulgement.[4] On the facts of this case, it was reasonable for the trial court to conclude that the potential for residually privileged information was minimal enough that the Reutters were not entitled to attend Defendants' interviews with the Medical Witnesses. We continue to believe, as we stated in *Samms*, that the trial court has the discretion to make this determination. *See* 908 P.2d at 524 ("Issues arising in the course of pretrial discovery are committed to the discretion of the trial court ....").

### III.

The trial court did not abuse its discretion by concluding that Defendants' interviews of the Medical Witnesses could proceed outside of the Reutters' presence. For the reasons stated above, the rule to show cause is discharged.

---

4. The notice requirement of *Samms* is consistent with federal regulations promulgated under the Health Insurance Portability and Accountability Act ("HIPAA"), and we disagree with the Reutters' argument to the contrary. The HIPAA regulations permit the disclosure of medical information in response to a subpoena, discovery request, or other lawful process so long as the patient first receives sufficient notice in order to have an opportunity to object to the court. *See* 45 C.F.R. § 164.512(e)(1)(ii)(A). The Reutters received prior notice and an opportunity to object when Defendants filed their motion with the trial court requesting permission to interview the Medical Witnesses.