In re Ernest ORTEGA, Plaintiff

v.

COLORADO PERMANENTE MEDICAL GROUP, P.C.; Kaiser Foundation Health Plan of Colorado; and David Lieuwen, M.D., Defendants.

No. 10SA373.

Supreme Court of Colorado, En Banc.

Nov. 7, 2011.

Rehearing Denied Dec. 5, 2011.*

* Chief Justice Bender would grant the Petition; Justice Boatright does not participate.

Leventhal, Brown & Puga, P.C., Jim Leventhal, Molly L. Greenblatt, Benjamin I. Sachs, David P. Mason, Denver, Colorado, Attorneys for Plaintiff.

Martin Conklin, P.C., John L. Conklin, Amy K. Cardone, Denver, Colorado, Pryor Johnson Carney Karr Nixon, P.C., Elizabeth C. Moran, Greenwood Village, Colorado, Attorneys for Defendants.

Office of University Counsel, Patrick T. O'Rourke, Denver, Colorado, Attorneys for Amicus Curiae the Regents of the University of Colorado.

Davis Graham & Stubbs LLP, John A. Francis, Richard P. Holme, Lisa Edwards Rothrock, Denver, Colorado, Attorneys for Amicus Curiae HCA–HealthONE LLC.

Davis Graham & Stubbs LLP, Andrew M. Low, Richard P. Holme, Denver, Colorado, Attorneys for Amicus Curiae Copic Insurance Company.

Hershey Skinner, LLC, Kari M. Hershey, Littleton, Colorado, Attorneys for Amicus Curiae the Colorado Medical Society.

Justice RICE delivered the Opinion of the Court.

This original proceeding arises out of a medical malpractice case currently pending in the Denver district court. Plaintiff Ernest Ortega has sued defendants Dr. David Lieuwen and Kaiser Foundation Health Plan of Colorado ("Kaiser") for malpractice based on what he alleges to have been negligent medical treatment given to him on September 28, 2007 and October 2, 2007. Ortega seeks relief from a trial court order denying him a protective order for his electronic medical record spanning the ten-year period preceding the incident underlying this case. The trial court determined that Ortega's electronic medical record was not protected by the physician-patient privilege and that the record was relevant to prepare a defense. Therefore, it held that the defendants may review Ortega's electronic medical record, which is in their possession, to prepare a defense.

We hold that the trial court did not abuse its discretion when it ruled that the physician-patient privilege did not attach to Ortega's electronic medical record based on the statutory exception contained in subsection 13–90–107(1)(d)(I), C.R.S. (2011). We further hold that section 10–16–423, C.R.S. (2011), provides a similar exception which permits health maintenance organizations to review a member's relevant health information in the event of a claim or litigation. Additionally, Ortega's entire electronic medical record is relevant for defendants to prepare a defense. Therefore, the defendants may examine and use unredacted copies of all of Ortega's electronic medical record in their care, custody and control generated from 1998 to the present to prepare their defense. Accordingly, we discharge the rule to show cause.

## I. Facts and Procedural History

Ortega brought a medical malpractice action against Lieuwen and Kaiser in the Denver district court after suffering a myocardial infarction outside of Kaiser's facility shortly after completing an exercise treadmill stress test.

At the time of his heart attack, Ortega had been a member of Kaiser's Health Maintenance Organization ("HMO") for almost twenty years. Kaiser provides comprehensive, integrated medical care and operates a variety of medical offices throughout the metropolitan Denver region.

Kaiser contracts with Colorado Permanente Medical Group ("CPMG"), an integrated group medical practice of physicians in

primary care and specialty fields, to provide medical care to Kaiser members. In addition, Kaiser's medical offices are staffed by physician assistants, nurse practitioners, nurses, therapists, pharmacists, and other ancillary health care providers, all of whom are employed by Kaiser. Lieuwen is a shareholder-employee of CPMG.

Kaiser has maintained an integrated electronic medical record system since 1998 which enables treating Kaiser health care providers to access the entirety of a patient's electronic medical history. Kaiser employees and affiliated medical providers create the electronic medical record at the time they provide care; they also have instantaneous access to a member's electronic medical record. Kaiser created and kept Ortega's medical record in its electronic medical record system from 1998 through the time of the incident in 2007.

Days after filing an amended complaint, Ortega notified the defendants that he intended to assert the physician-patient privilege to protect the contents of his electronic medical record. In response, Kaiser and Lieuwen refrained from reviewing the medical record and provided a copy of the record to Ortega's counsel.

Ortega filed a motion for protective order seeking to prevent defendants from reviewing his electronic medical record. He asserted that the physician-patient privilege prevented disclosure of his medical record and that he had not waived the privilege. The defendants argued that the physician-patient privilege did not attach to Ortega's electronic medical record because the statutory exception contained in subsection 13–90–107(1)(d)(I) applied.

The trial court denied the motion for protective order. Ortega then filed a motion for reconsideration, which the trial court again denied in a ten-page order. The trial court held that two statutory provisions applied to the case at hand and that each provided exceptions to the physician-patient privilege: (1) subsection 13–90–107(1)(d)(I) governing physicians, surgeons and registered professional nurses; and (2) section 10–16–423 governing HMOs. Applying these statutes, the trial court determined that the physician-

patient privilege did not attach to Ortega's medical record. The trial court also found that the medical records were relevant because they concerned the subject matter of Ortega's suit. Accordingly, the defendants were entitled to access the records in their care, custody, and control and use them in preparation of their defense.

Ortega requested and was granted a stay of the trial court's order. Ortega then filed a C.A.R. 21 Petition with this Court seeking review of the trial court's order. We issued a rule to show cause to determine whether the trial court properly denied Ortega's motion for a protective order.

## II. Jurisdiction and Standard of Review

■ This Court will not ordinarily review a trial court's pretrial discovery order. *Cardenas v. Jerath*, 180 P.3d 415, 420 (Colo. 2008). C.A.R. 21, however, authorizes us to review a trial court's order if a remedy on appeal would be inadequate. *Cardenas*, 180 P.3d at 420. When a trial court's order involves records which a party claims are protected by a statutory privilege, as here, an immediate review is appropriate because the damage that could result from disclosure would occur regardless of the ultimate outcome of an appeal from a final judgment. *Clark v. Dist. Court*, 668 P.2d 3, 7 (Colo. 1983). Thus, we invoke our original jurisdiction under C.A.R. 21 in this case to review the trial court's order because of the nature of the rights implicated and the potential irreparable harm from disclosure of medical information. *See Hoffman v. Brookfield Republic, Inc.*, 87 P.3d 858, 861 (Colo.2004). We review matters under C.A.R. 21 for an abuse of discretion. *Cardenas*, 180 P.3d at 420.

## III. Analysis

### A. The Physician–Patient Privilege

■ The trial court determined that, under the statutory exception to the physician-patient privilege contained in subsection 13–90–107(1)(d)(I), the privilege did not attach to Ortega's electronic medical record. We agree.

█ The physician-patient privilege arises by statute in Colorado and protects communications and information shared between a patient and his physician once the privilege attaches. § 13–90–107(1)(d); *Clark*, 668 P.2d at 7–8. The privilege is intended to encourage a patient to make a full disclosure to his treating physician, to promote effective diagnosis and treatment, and to protect the patient from embarrassment. *Clark*, 668 P.2d at 8. The statute provides:

> a physician, surgeon, or registered professional nurse ... shall not be examined without the consent of his or her patient as to any information acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient.

§ 13–90–107(1)(d).

The physician-patient privilege is not absolute, however; the General Assembly also provided statutory exceptions to the privilege. *See* §§ 13–90–107(1)(d)(I)–(VI). Relevant to our inquiry here, section 13–90–107(1)(d)(I) mandates that the provisions of subsection (1)(d):

> *shall not apply to* : ... A physician, surgeon, or registered professional nurse *who is sued* by or on behalf of a patient ... on *any cause of action arising out of or connected with the physician's* or nurse's care or treatment of such patient.

(emphasis added).

█ The meaning of the statutory exception contained in section 13–90–107(1)(d)(I) is an issue of first impression. In construing statutes, we seek to effectuate the intent of the legislature, looking first to the plain language of the statute and giving the language its commonly accepted and understood meaning. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010). Where the statutory language is clear and unambiguous, we do not resort to legislative history or further rules of statutory construction. *Id.*

█ The language of section 13–90–107(1)(d)(I) is clear. First, the exception requires a patient to institute a suit or cause of action against a physician, surgeon or registered professional nurse. Also, the patient's suit must arise out of or be connected with the physician's, surgeon's, or registered professional nurse's care or treatment of the patient. § 13–90–107(1)(d)(I). When these two circumstances occur, the physician-patient privilege provided in subsection (1)(d) no longer applies. *Id.* Therefore, when a patient institutes an action against a physician, and that action arises out of or is connected with the physician's care or treatment of the patient, the information acquired by the physician is *not* privileged.[1] *Id.; see also Reutter v. Weber*, 179 P.3d 977, 980 (Colo. 2007) (recognizing in dicta the statutory exception provided by subsection 13–90–107(1)(d)(I)).

█ This exception avoids the unfair circumstance of allowing a patient to use privileged information to assert a medical malpractice claim while simultaneously preventing the sued medical provider from using the same information in its defense. *See Reutter*, 179 P.3d at 980. Reading subsections (1)(d) and (1)(d)(I) together, when the statutory exception contained in (1)(d)(I) applies, the physician may be examined as to any information acquired in attending the patient that was necessary to enable the physician to prescribe or act for the patient.

Here, the physician-patient privilege does not attach to Ortega's electronic medical record. Kaiser healthcare providers utilize a comprehensive integrated approach to medical care. Part of this approach requires that the healthcare provider has a complete electronic medical record for each member. Thus, when a physician attends to a patient, he necessarily acquires the entire medical record in order to effectively evaluate and treat the patient. Accordingly, Lieuwen had instantaneous access to Ortega's entire electronic medical record as Ortega's treating physician.[2] Ortega brought a medical mal-

---

1. With our holding today, we make clear that cases that arise in the medical malpractice context invoke subsection 13–90–107(1)(d)(I)'s statu-tory exception to the physician-patient privilege rather than the implied waiver doctrine.

2. Kaiser's integrated electronic medical record is instantaneously accessible by any and all Kaiser

practice action against Lieuwen as his physician. Consequently, Ortega's entire electronic medical record, which constitutes the information acquired by Lieuwen in attending Ortega, is not protected by the physician-patient privilege.

We determine that the trial court did not abuse its discretion when it held as a matter of law that the physician-patient privilege did not attach to Ortega's medical record under subsection 13–90–107(1)(d)(I).

### B. HMO Confidentiality Requirements

■■■ Subsection 13–90–107(1)(d)(I) exempts Ortega's electronic medical record from the physician-patient privilege; the exception does not, however, grant Kaiser as an HMO the same exemption.[3] Section 10–16–423, rather than the physician-patient privilege, governs the confidentiality of HMO members' information, and thus controls here. The statute provides:

> Any data or information pertaining to the diagnosis, treatment, or health of any enrollee or applicant obtained from such person or from any provider by any health maintenance organization shall be held in confidence and shall not be disclosed *to any person except* to the extent that it may be necessary to carry out the purposes of part 1 of this article or this part 4; or upon the express consent of the enrollee or applicant; or pursuant to statute or court order for the production of evidence or the discovery thereof; *or in the event of claim or litigation between such person and the health maintenance organization wherein*

*such data or information is pertinent* ; or as otherwise required or permitted by state or federal law.

§ 10–16–423 (emphasis added).

This Court has not previously interpreted section 10–16–423. When construing statutes we seek to effectuate the intent of the legislature. *Smith,* 230 P.3d at 1189. First, we look to the plain language of the statute, giving the language its commonly accepted and understood meaning. *Id.*

■■■ The plain language of the statute first mandates that an HMO shall not disclose[4] any data or information pertaining to the diagnosis, treatment, or health of any enrollee or applicant obtained from such person or from any provider by any HMO. § 10–16–423. Then, the statute provides a number of exceptions to that mandate. *Id.* Relevant to our inquiry in the instant case, the statute provides an exception in the event of a claim or litigation between an enrollee and the HMO wherein "such data or information is pertinent."[5] *Id.*

■■■ The only limitation placed on the type of claim or litigation to which the exception applies is that the data or information must be "pertinent" to the claim or litigation. *Id. Black's Law Dictionary* 1261 (9th ed. 2009), defines "pertinent" as "pertaining to the issue at hand; relevant." Thus, the term "pertinent" is synonymous with the term "relevant." *Id.; see also People v. Miller,* 890 P.2d 84, 91 (Colo.1995) ("Several courts have interpreted the word pertinent' to be synonymous with relevant.' "). Therefore, it

---

healthcare providers and is a hallmark of the services Kaiser provides.

3. The trial court analyzed section 10–16–423 under the physician-patient privilege doctrine. Because Kaiser is an HMO, it cannot practice medicine under Colorado law and the physician-patient privilege is accordingly inapplicable to it. *See* § 10–16–421(3), C.R.S. (2011). Nonetheless, for the reasons stated in this opinion, we determine that section 10–16–423 governs an HMO's obligations with respect to the confidentiality of members' health information under Colorado law.

4. The statute gives no indication that the word "disclose" means a legal disclosure under C.R.C.P. 26(a). Rather, we understand "disclose" to have its commonly understood mean-

ing: "to open." *Webster's Third New International Dictionary* 645 (3d ed. 2002).

5. Section 10–16–423 also provides an exception for disclosing data or information when "otherwise required or permitted by ... federal law." Here, Ortega conceded before the trial court that he no longer asserted that federal law was more stringent than Colorado law regarding privilege. Therefore, the trial court did not examine federal law, but concluded that Ortega failed to meet his burden to establish that federal law was more stringent than Colorado law. In briefing to this Court, Ortega again conceded that Colorado law was more stringent than federal law. Therefore, we limit our analysis to Colorado law.

would be equally correct to interpret the plain language of the statute to limit the data or information to that which is relevant to the claim or litigation. The phrase "such data or information" in the exception refers to any data or information pertaining to the diagnosis, treatment, or health of any enrollee or applicant obtained from an enrollee or applicant or from any provider by any health maintenance organization. § 10–16–423.

Thus, section 10–16–423 controls the confidentiality of enrollee information provided to HMOs by enrollees and medical providers and also contains an exception for the disclosure of relevant information in the event of a claim or litigation between the HMO and the enrollee.

Applied to the case at hand, section 10–16–423 permits Kaiser to examine Ortega's electronic medical record, to the extent the record is relevant to claims raised by Ortega against Kaiser, because Ortega brought suit against Kaiser.

## C. Relevance of Ortega's Electronic Medical Record

Subsection 13–90–107(1)(d)(I) and section 10–16–423 allow the disclosure of otherwise protected medical information in the event of litigation when the information is relevant to the litigation. Here, the trial court denied a protective order, determining that what was ultimately at "issue [wa]s Defendants' right in defense of this action to review Plaintiff's

medical records in their possession" and to prepare a defense. Accordingly, we now turn to the trial court's determination of the relevance of Ortega's electronic medical record to the preparation of a defense.

The trial court determined that, because privilege did not attach, its discretion was circumscribed only by whether the information was relevant under C.R.C.P. 26(b)(1).[6] The trial court concluded that all of Ortega's medical records in the possession of defendants since 1998 were relevant under Rule 26(b)(1). Accordingly, the trial court ruled that the defendants may examine unredacted copies in their care, custody and control of all of Ortega's electronic medical record generated from 1998 to the present in preparation of their defense in the case at hand. We agree.

■ Ortega has sued Lieuwen for professional negligence and Kaiser for negligence. Ortega claims broad and numerous damages.[7] A review of Ortega's medical record is relevant to enable defendants to prepare an answer, assert defenses, develop legal theories, plan discovery, and determine evidence and witnesses for trial. The trial court did not determine that the entire medical record would be *admissible* at trial, only that it is relevant for preparing a defense. Neither the trial court's ruling on the motion for protective order,[8] nor our opinion here, affects plaintiff's opportunity to object to the

---

6. C.R.C.P. 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

7. Ortega claims damages for: pain and suffering; inconvenience; emotional distress; permanent injury and impairment of quality of life; loss or reduction of his life expectancy; loss of trust in health care providers due to the betrayal of trust by the defendants; fear and anxiety that he will

suffer another near death experience; and past, present and future economic losses, including the cost of additional medical and health treatment required because of his cardiac condition.

8. This case arises in a peculiar posture having as its genesis a motion for protective order. Customarily, in a motion for protective order, the moving party seeks to shield from discovery information that the opposing party has requested or will request. *See, e.g., Bond v. Dist. Court,* 682 P.2d 33, 36 (Colo.1984) (medical records requested from third party physician during discovery). Moreover, the party against whom the protective order is sought ordinarily is not already in possession of the information. *See, e.g., Direct Sales Tire Co. v. Dist. Court,* 686 P.2d 1316, 1319 (Colo.1984) ("The plaintiff filed a motion for protective orders alleging that trade secrets in its possession had been sought, or would be sought by the defendants in connection with discovery proceedings.").

relevance of medical information before trial to safeguard against admitting unrelated or irrelevant medical information into evidence. Accordingly, we agree with the trial court that the motion for protective order should be denied and that the defendants may examine unredacted copies of Ortega's medical record generated from 1998 to the present in their care, custody and control in preparation of their defense in the case at hand.

## IV. Conclusion

The trial court did not abuse its discretion by concluding that defendants could examine Ortega's electronic medical record in their care, custody and control from 1998 through the present to prepare a defense. For the reasons stated above, we discharge the rule to show cause.

Chief Justice BENDER dissents.

Chief Justice BENDER, dissenting.

In this medical malpractice case, the majority departs from our long-standing precedent on Colorado's physician-patient privilege and holds that because a patient happens to belong to an HMO that maintains an integrated electronic medical record system, the physician-patient privilege does not apply to any of the patient's nearly 700 medical records stored in that system—even though the vast majority of the records are not connected in any way to the patient's medical malpractice claim.

First, I believe the majority's holding misconstrues the mandate of Colorado's physician-patient privilege statute by holding that a physician's ability to access medical records is sufficient to meet the privilege statute's requirement that the records be "acquired" by the physician. Second, I disagree with the majority's holding that the doctrine of implied waiver does not apply in medical malpractice cases. It is contrary to our long-standing precedent that applies this doctrine to these cases.

Third, I disagree with the majority's holding that the trial court did not abuse its discretion when it failed to follow the privilege log procedure set forth by this court's precedent, held that all of the plaintiff's medical records were relevant, and issued a blanket order for the plaintiff to disclose all of his medical records. Our precedent has explicitly rejected blanket discovery orders of private medical records and has also rejected a strict relevance test for discoverability. Fourth, I disagree with the majority's holding that the exception to the HMO confidentiality statute is satisfied because not all of the plaintiff's medical records are pertinent to this case.

It is the "very nature of evidentiary witness privileges to sacrifice some availability of evidence relevant to an administration of justice." *Johnson v. Trujillo*, 977 P.2d 152, 157 (Colo.1999) (internal quotation omitted). Such a sacrifice is "warranted by the social importance of interests and relationships that the privileges seek to protect." *Id.* The majority's holding in this case runs counter to the letter and purpose of the physician-patient privilege statute, thereby undermining the public policy of preserving the medical privacy rights that the privilege was designed to protect.[1] *See id.* at 158. Hence, I respectfully dissent.

## I. Background

A brief review of the facts is necessary to frame the legal issues. Plaintiff Ernest Ortega, a long-time HMO member, alleges that his primary care physician scheduled a treadmill stress test for him after he sought treatment for pain in his chest, neck, shoulders, and back. The defendant physician, David Lieuwen, administered a treadmill stress test and then discharged him. Five to ten minutes later, Ortega returned to see Dr. Lieuwen and complained of a recurrence of shoulder and neck pain. Dr. Lieuwen then performed a physical examination, and Ortega claims Dr. Lieuwen negligently failed to order cardiac testing, failed to give Ortega

---

1. I note that recent information confirms the public's distrust of electronic medical records. According to recent research, 67 percent of Americans fear disclosure of their medical records if such records are made available electronically. Nicolas P. Terry & Leslie P. Francis, *Ensuring the Privacy and Confidentiality of Electronic Heath Records*, 2007 U. Ill. L.Rev. 681, 696.

nitroglycerin, and discharged him home in "stable" condition. While walking to his car, Ortega suffered a heart attack. Ortega sued his HMO, Kaiser, and Dr. Lieuwen.

Kaiser uses a comprehensive electronic health information system, wherein all of its patients' medical records are stored in an electronic database that can be accessed by any of Kaiser's physicians. Kaiser's medical records for Ortega contain nearly ten years' worth of his past medical records, which amounts to almost 700 different records. These records include health information unrelated to Ortega's cardiac condition and treatment for that condition.[2]

Dr. Lieuwen and Kaiser sought blanket access to all of Ortega's medical records. Ortega claimed that the defendants were not entitled to such broad discovery of his private medical records stored in Kaiser's electronic database and complied a privilege log of documents he claimed were unrelated to his allegations in the lawsuit and thus privileged.

The trial court ruled, and the majority now affirms, that both Dr. Lieuwen and Kaiser are entitled to discover Ortega's entire confidential medical history—containing nearly 700 medical records—even though the defendants did not claim that any of Ortega's past records pertained to the medical treatment Ortega received on the days at issue or were consulted by Dr. Lieuwen as part of the necessary treatment of Ortega's pain complaints.

## II. Physician–Patient Privilege

Communications between patients and physicians have long been recognized as sacred and exempt from disclosure because "[t]here are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate." § 13–90–107(1), C.R.S. (2011). The basis for privacy in medical records dates back to the fifth century, B.C.E., and the Hippocratic Oath, which states in pertinent part:

> Whatsoever things I see or hear concerning the life of men, in my attendance on the sick or even apart therefrom, which ought not to be noised abroad, I will keep silence thereon, counting such things to be sacred secrets.

See Barbara L. Kaiser, *Patients' Rights of Access to Their Own Medical Records: The Need for New Law*, 24 Buff. L.Rev. 317, 317 & n. 1 (1974–75). Such privacy "enhance[s] the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the physician's disclosure of information imparted to him by the patient during the course of a consultation for purposes of medical treatment." *Clark v. Dist. Court*, 668 P.2d 3, 8 (Colo.1983).

Colorado's physician-patient privilege, as codified in section 13–90–107, provides that a "physician, surgeon, or registered professional nurse ... shall not be examined without the consent of his or her patient as to any information *acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient ....*" § 13–90–107(1)(d) (emphasis added). The statute permits limited disclosure of this information when "[a] physician, surgeon, or registered professional nurse ... is sued by ... a patient ... on any cause of action arising out of or connected with the physician's or nurse's care or treatment of such patient ...." § 13–90–107(1)(d)(I). The privilege applies equally to in-court testimony and pretrial discovery of information. *Cardenas v. Jerath*, 180 P.3d 415, 424 (Colo.2008)(citing *Weil*

---

**2.** It is not difficult to conceive of information that could be contained in a patient's medical records, such as information related to the patient's mental or reproductive health, which could be extremely embarrassing or troublesome to have revealed to all persons involved in the litigation—potentially including the plaintiff's spouse or family members. See *Johnson*, 977 P.2d at 158 (acknowledging the potentially offensive nature of the compelled disclosure of sensitive and private medical and counseling records). For example, a patient who has suffered from a mental illness or addiction, contracted a sexually transmitted disease, obtained an abortion, used a sperm donor to become pregnant, is impotent or sterile, or had a miscarriage may not wish for this personal information to be revealed to a team of lawyers, opposing parties, and possibly his or her family—especially when it has no connection to the case at hand. Hence, I believe that blanket disclosures of all of a patient's medical records have rightfully been rejected by this court in the past. See, e.g., *Alcon v. Spicer*, 113 P.3d 735, 737 (Colo.2005).

*v. Dillon Cos., Inc.*, 109 P.3d 127, 129 (Colo. 2005)).

The majority concludes that because Kaiser "has a complete electronic medical record for each member," "when a [Kaiser] physician attends to a patient, he necessarily acquires the entire medical record in order to effectively evaluate and treat the patient." Maj. op. at 448. I disagree. There is no evidence that Dr. Lieuwen actually acquired or used all of Ortega's medical records in his treatment of Ortega, only that he had access to the records in Kaiser's system. *See id.* ("Lieuwen had instantaneous *access* to Ortega's entire electronic medical record as Ortega's treating physician." (Emphasis added)).

"Acquire" and "access" have different meanings. "Acquire" means "[t]o gain possession or control of; to get or obtain." *Black's Law Dictionary* 20 (9th ed. 2009). "Access" means an "opportunity or ability to enter, approach, pass to and from, or communicate with." *Id.* at 14. Thus, to "acquire" involves actually obtaining something, whereas "access" involves merely the opportunity to do so.

Although Dr. Lieuwen had access to Ortega's entire medical record, because he did not actually acquire it in his treatment of Ortega, I disagree with the majority's holding that Ortega's entire electronic medical record is not protected by the physician-patient privilege. Maj. op. at 448. This holding contradicts the plain language of the statute, which states that it applies to information *"acquired "* by the treating physician. § 13–90–107(1)(d). In my view, the statute does not create an exception for information the treating physician had *access* to but did not actually acquire to treat the patient. *See* § 13–90–107(1)(d). By failing to acknowledge this significant distinction, I suggest the majority misreads the mandate of the statute.[3]

Even if Dr. Lieuwen had actually acquired all of Ortega's records, I still do not believe the requirements of section 13–90–107(1)(d) have been satisfied. Section 13–90–107(1)(d) applies to information the physician acquired "that was necessary to enable him or her to prescribe or act for the patient." In this case, there has been no showing that almost ten years of Ortega's medical history, containing nearly 700 records, were necessary for Dr. Lieuwen to treat Ortega's chest, neck, shoulder, and back pain. It is obvious that Dr. Lieuwen could not have possibly reviewed nearly 700 records during his brief treatment of Ortega. Hence, the entirety of Ortega's medical records could not have been used to treat Ortega and the exception in section 13–90–107(1)(d) does not apply.

The majority implies that Kaiser's physical possession of Ortega's medical records somehow affects the applicability of the physician-patient privilege. Maj. op. at 450 n. 8. Possession is not the touchstone of whether the physician-patient privilege attaches. No matter who possesses the records, the privilege-holder—here, the patient—controls the privileged information and determines who may obtain access, absent a waiver. *See Cardenas*, 180 P.3d at 424 ("The physician-patient privilege is designed to protect the patient, and the patient may waive such protections, thereby consenting to disclosure.") The majority's retroactive remedy to determine relevance for admissibility at trial of the disclosed privileged information is irrelevant to the operation of the privilege. Maj. op. at 450–51. Once the cat is out of the bag, the protection required by a statutory privilege is lost. *See Cardenas*, 180 P.3d at 424 ("[T]he physician-patient privilege protects certain information from discovery even if the information is relevant to the subject

---

**3.** From a policy perspective, the majority's broad holding is significant. It is likely that in the future all medical records will be stored electronically and therefore will be accessible to all of a patient's physicians. *See* Karoline Kreuser, *The Adoption of Electronic Health Records: Benefits and Challenges*, 16 Annals Health L. 317, 318 (2007). Such digital access will likely increase physicians' capability to provide treatment to their patients. *See id.* at 319; Varsha D. Gadani,

*Patient Consent to Health Information Technology: Safeguarding Patients' Records and Confidences,* 12 N.C. J.L. & Tech. Online 97, 100–01 (2010). If all medical records become digitized, the majority's holding may have the effect of requiring all plaintiffs to disclose their entire history of medical records if they bring a malpractice suit because all of the plaintiff's physicians will have had access to all of the plaintiff's private medical records.

matter of the case and would be discoverable otherwise.").

## III.   Doctrine of Implied Waiver

### A.   Medical Malpractice Cases

The majority holds that the doctrine of implied waiver is inapplicable to medical malpractice cases. Maj. op. at 448 n. 1. Yet our prior decisions have applied the doctrine of implied waiver to medical malpractice cases. *See Hartmann v. Nordin,* 147 P.3d 43, 48 (Colo.2006) (holding that plaintiff had impliedly waived her physician-patient privilege regarding her medical condition by placing at issue the cause of her stroke in claiming that defendants' malpractice caused it); *Samms v. Dist. Court,* 908 P.2d 520, 524 (Colo.1995) (holding, in a medical malpractice case, that a plaintiff impliedly waives his or her physician-patient privilege with respect to the medical condition he or she has injected into the case; thus, the plaintiff in *Samms* waived her physician-patient privilege with respect to information related to her heart condition, which she claimed defendant physician failed to diagnose properly); *see also Reutter v. Weber,* 179 P.3d 977, 983 (Colo.2007) ("[I]n some instances, the waiver of the physician-patient privilege resulting from filing the medical malpractice action might cover virtually all that was discussed between a physician and patient. In other cases, it might cover only a small portion of what was discussed. In such instances, some or all of such discussions will remain subject to the privilege." (Internal citations omitted)).

### B.   Abuse of Discretion

I would hold that the doctrine of implied waiver applies in this case. In my view, the trial court abused its discretion in its order in two ways: (1) by not adhering to the procedure this court set forth in *Alcon* regarding privilege logs; and (2) by holding that all of Ortega's medical records were relevant, which is in effect a blanket order requiring disclosure of all of Ortega's private records.

### 1.

The trial court concluded, without identifying the individual records, that all of Ortega's

medical records were relevant for purposes of discovery. The trial court did not review Ortega's privilege log because the court reasoned that the relevancy of the requested records was "more appropriately evaluated in the first instance by medical professionals on both sides of the case rather than by lawyers or a judge." By holding that the trial court did not abuse its discretion by ordering the discovery of these records, the majority approves the trial court's decision not to review Ortega's privilege log.

Our precedent specifically establishes a method for trial courts to follow to assess the validity of the plaintiff's claims of physician-patient privilege. *Alcon,* 113 P.3d at 742. To assert the privilege, a party must specifically identify in its privilege log which documents the party claims are privileged and the basis for that claim. *Id.*

The documents must be described in the log with sufficient detail so that the opposing party and the trial court can assess the claim of privilege as to each withheld communication. *Id.* If, after reviewing the privilege log, the opponent seeking discovery still contends that the privilege does not apply and the parties cannot resolve the dispute informally, then the parties can request that the trial court perform an in camera inspection of the challenged documents. *Id.* This process narrows the review necessary by the trial court. *Id.* In my view, the trial court should have followed this procedure and ruled on the privilege log that Ortega submitted. Instead, by its broad discovery order, approved by the majority, the trial court forced Ortega into a blanket wavier of "a lifetime of [his] complete medical records." *Id.*

### 2.

The trial court ordered a blanket disclosure of Ortega's entire medical record after finding that "all of [Ortega's] medical records in the possession of the [d]efendants since 1998 are relevant under C.R.C.P. 26(b)(1)." The majority affirms the trial court's ruling and further holds that a review of Ortega's entire medical record is relevant "to enable defendants to prepare an answer, assert defenses, develop legal theories, plan discovery,

and determine evidence and witnesses for trial." Maj. op. at 450. I disagree.

Relevance has never been the sole factor in determining whether the physician-patient privilege has been waived. *See Alcon*, 113 P.3d at 738("Taken together, C.R.C.P. 26(b)(1) and section 13–90–107(d) establish that, even if relevant to the subject matter involved in the pending action, a party is not necessarily entitled to discovery of information from a physician relating to the treatment of a patient."); *Johnson*, 977 P.2d at 157 (adopting the Supreme Court of Texas's rule that "relevance alone cannot be the test, because such a test would ignore the fundamental purpose of evidentiary privileges, which is to preclude discovery and admission of relevant evidence under prescribed circumstances." (quoting *R.K. v. Ramirez*, 887 S.W.2d 836, 842 (Tex.1994))); *see also Cardenas*, 180 P.3d at 424 (reasoning that "the physician-patient privilege protects certain information from discovery even if the information is relevant to the subject matter of the case and would be discoverable otherwise," and thus holding that to ensure the discovery of infant plaintiff's mother's medical records was limited to the scope of the issue of causation associated with plaintiff's claims for personal injury, discovery was limited to a specific time period and to the extent that the records were relevant to the cause of plaintiff's injuries).

Even the potential that information is tangentially relevant does not permit the information to come within the waiver. *Alcon*, 113 P.3d at 741 (holding that although records of plaintiff's general family physician, who did not treat plaintiff in connection with the accident or injuries similar to those claimed in the accident, might have been relevant to assessing plaintiff's claims of damages for loss of enjoyment of life, the physician-patient privilege protected all of these records except for those related to plaintiff's claimed damages for physical injuries and depression).

Implied waivers rarely amount to consent to general disclosure of all of the patient's communications with his or her physician. *See Hartmann*, 147 P.3d at 46 (citing *Alcon*, 113 P.3d at 739). Discovery must be tailored to the injuries and damages claimed by the plaintiff which are the subject of the lawsuit. *Alcon*, 113 P.3d at 741. Implied waivers are limited by the circumstances of the case, whether the claim be based upon medical malpractice or personal injury. *See Hartmann*, 147 P.3d at 50 (medical malpractice case holding that where plaintiff alleged that she suffered a stroke based on misdiagnosis and consequent lack of treatment, the trial court correctly permitted discovery limited to plaintiff's family history of diabetes, heart disease, and clotting conditions, but the trial court erred by compelling deposition answers concerning plaintiff's husband's health); *Alcon*, 113 P.3d at 737 (personal injury case holding that "waiver is limited to those records relating to the cause and extent of the injuries and damages allegedly sustained as a result of defendant's claimed negligence"). Hence, in the past this court has regularly rejected blanket authorizations to review medical records. *See Alcon*, 113 P.3d at 737; *see also Cardenas*, 180 P.3d at 424 (holding that the discovery of medical records was limited to the scope of the issue of causation of plaintiff's injuries).

We have held that the physician-patient privilege is not waived by generic claims for mental anguish, emotional distress, and loss of enjoyment of life that are incidental to physical injuries and do not exceed the suffering and loss an ordinary person would likely experience in similar circumstances. *Johnson*, 977 P.2d at 153; *see also Hartmann*, 147 P.3d at 50 ("[A] person who claims future damages does not waive, in blanket fashion, his physician-patient privilege for ten years of pharmaceutical records and complete patient records." (citing *Alcon*, 113 P.3d at 741)).

Although the trial court termed Ortega's claims for damages "less commonplace claims," Ortega's claims for loss or reduction of life expectancy, loss of trust in healthcare providers due to betrayal of trust by defendants, and fear and anxiety that he will suffer another near death experience are not unlike those damages claimed by the plaintiff in *Johnson*. *See Johnson*, 977 P.2d at 153–54, 158 (holding that a plaintiff's claims for mental anguish, emotional distress, pain and

suffering, and loss of enjoyment of life resulting from being upset, afraid, concerned for others, and a fear of having surgery as a result of a car accident, were "typical of tort plaintiffs in personal injury and other cases"). In my view, Ortega's claimed damages are not beyond those that an ordinary person would likely suffer after having an experience similar to that alleged by Ortega. Hence, I would hold that it was an abuse of discretion for the trial court to find that a blanket disclosure of all of Ortega's medical records was warranted based on his damages claims.

## IV. HMO Confidentiality Statute

I would decide this case solely based on the issue of physician-patient privilege. However, even if I were to assume the privilege did not apply, then I would also hold that it was an abuse of discretion for the trial court to find that the requirements of section 10–16–423, C.R.S. (2011), have been met in this case.[4] I agree with the majority that "pertinence" as used in section 10–16–423 has the same meaning as "relevance." Maj. op. at 450. Hence, for the same reasons discussed *supra*, I would hold that not all of Ortega's nearly 700 medical records from the last ten years are "pertinent" to the issues in this lawsuit.

---

4. I agree with the majority that the trial court erred by applying the physician-patient privilege to Kaiser, which, as an HMO, cannot practice medicine. *See* maj. op. at 449 n. 3.

