Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 5, 2018

**2018 CO 14**

**No. 17SA20, <u>In Re Bailey v. Hermacinski</u>—Physician–Patient Privilege—Implied Waiver.**

In this original proceeding, the supreme court considers the scope of the physician–patient privilege in a medical-malpractice action.  Contrary to the conclusion of the trial court, the supreme court holds that the Plaintiffs' non-party medical providers were not in consultation with Defendants such that the typically-privileged information held by those non-party medical providers was no longer protected by the physician–patient privilege.  Therefore, the trial court abused its discretion when it granted Defendants' request to hold ex parte interviews with those non-party medical providers on consultation grounds.  However, the supreme court remands the case to the trial court for consideration of whether the Plaintiffs impliedly waived the protection of the physician–patient privilege such that ex parte interviews may still be permitted.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 14

### Supreme Court Case No. 17SA20
*Original Proceeding Pursuant to C.A.R. 21*
Routt County District Court Case No. 16CV30089
Honorable Thomas W. Ossola, Judge

### In Re

### Plaintiffs:

Kelley Bailey and Michael Bailey,

v.

### Defendants:

Mark Hermacinski, M.D.; Leslie Ahlmeyer, M.D.; Mary Bowman, M.D.; and Yampa Valley Medical Center, a non-profit corporation.

### Rule Made Absolute
*en banc*
March 5, 2018

**Attorneys for Plaintiffs:**
Schoenwald & Thompson LLC
Julia Thompson
  *Denver, Colorado*

**Attorneys for Defendants:**
Jaudon & Avery LLP
David H. Yun
Jared R. Ellis
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Defense Lawyers Association:**
Ruebel & Quillen, LLC
Jeffrey Clay Ruebel
Casey A. Quillen
  *Westminster, Colorado*

**Attorneys for Amicus Curiae Colorado Medical Society:**
Conklin Cardone & Rutberg, PC
John L. Conklin
Amy K. Cardone
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
Cross & Bennett, L.L.C.
Joseph F. Bennett
  *Colorado Springs, Colorado*

**Attorneys for Amicus Curiae COPIC Insurance Company:**
Kittredge LLC
Daniel D. Domenico
  *Denver, Colorado*

**Attorneys for Amicus Curiae Regents of the University of Colorado:**
Office of University Counsel
Patrick T. O'Rourke
  *Denver, Colorado*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.
**JUSTICE HART** does not participate.

2

¶1 In this original proceeding, we consider the scope of the physician–patient privilege in a medical-malpractice action. Section 13-90-107(1)(d), C.R.S. (2017), prohibits certain medical providers from revealing, in testimony or otherwise, information about a patient gathered in the course of treating that patient. That prohibition, however, is not unlimited. Section 13-90-107(1)(d)(I), for instance, states that when a patient sues their medical provider, information "arising out of or connected with" that provider's treatment of the patient is not protected by the physician–patient privilege. And section 13-90-107(1)(d)(II) deems information held by a non-party medical provider who was "in consultation with" a defendant as similarly outside the protection of the physician–patient privilege.

¶2 In this case, Defendants sought ex parte interviews with a number of non-party medical providers. Thus, this dispute, as presented to us, does not implicate the physician–patient relationship between Kelley Bailey ("Bailey") and Defendants, meaning section 107(1)(d)(I) is inapplicable. Instead, the issue here is whether the non-party medical providers were "in consultation with" Defendants such that section 107(1)(d)(II) removed that typically privileged information from the protection of the physician–patient privilege. We hold that the non-party medical providers were not in consultation with Defendants for the purposes of section 107(1)(d)(II). However, we remand this case to the trial court for consideration of whether Plaintiffs Kelley and Michael Bailey ("the Baileys") impliedly waived the physician–patient privilege for the non-party medical providers. On remand, if the trial court concludes that the Baileys did waive that privilege, it should reconsider whether there is any risk that (1) ex parte

interviews with the non-party medical providers would inadvertently reveal residually privileged information, or (2) Defendants would exert undue influence on the non-party medical providers in the course of any ex parte interviews.

## I. Facts and Procedural History

¶3 In March 2014, Bailey underwent a hysterectomy performed by Doctor Ellis. In July 2014, Bailey visited Defendant Yampa Valley Medical Center ("Yampa") reporting abdominal pain. A CT scan revealed accumulated fluid that medical professionals at Yampa believed to be related to the March 2014 surgery. Bailey then underwent surgery performed by Defendants Doctor Ahlmeyer and Doctor Hermacinski. The Yampa doctors removed Bailey's appendix, several adhesions from the hysterectomy, and her right ovary due to a ruptured ovarian cyst.

¶4 Two days after Bailey was discharged from Yampa, Doctor Ellis referred her to Craig Memorial Hospital ("Craig") after she reported abdominal pain, nausea, vomiting, and chills. Doctors at Craig determined that Bailey was suffering from a perforated bowel. Bailey then underwent emergency surgery at Craig to repair the perforation. Bailey remained there for nearly a month and went through a number of abdominal washouts as a result of the perforation, and she has received repeated follow-up care from a number of doctors at Craig ("the Craig treaters"). About a month after her release from Craig, Bailey went to a third hospital, St. Mary's Medical Center, due to significant nausea and vomiting. There, she was treated by two doctors ("the St. Mary's treaters").

4

¶5     In 2016, the Baileys sued Doctor Ahlmeyer, Doctor Hermacinski, Doctor Bowman, and Yampa ("Defendants") alleging that their negligence led to significant harm and subsequent medical expenses.

¶6     During discovery, Yampa produced hundreds of pages of Bailey's medical records covering her July 2014 treatment. For their part, as relevant here, the Baileys produced portions of Bailey's medical records from the care she received at Craig Memorial Hospital, St. Mary's Medical Center, and the offices of two other doctors. However, the Baileys withheld portions of those records, claiming that the information withheld was not relevant to the issues in this lawsuit and therefore remained protected by the physician–patient privilege. The Baileys submitted privilege logs indicating what information they withheld. Defendants did not object to the privilege logs before the trial court; however, they requested ex parte interviews with a number of medical providers who treated Bailey, including four Yampa doctors, the Craig treaters, and the St. Mary's treaters. The Baileys did not object to Defendants' request to interview the Yampa doctors, except that any interview with Doctor Thompson be limited to certain topics. However, the Baileys did object to Defendants' request to conduct ex parte interviews of the Craig and St. Mary's treaters.

¶7     In a two-page order, the trial court approved Defendants' request for ex parte interviews with the Craig and St. Mary's treaters, finding that those treaters were "engaged in a unified course of treatment in that they were only treating [Bailey] for complaints and conditions arising out of the original alleged acts of negligence." As a result, the trial court continued, the Craig and St. Mary's treaters were "in consultation

5

with" Defendants "sufficient to give rise to a waiver of the physician–patient privilege." The court also concluded that there was "little to no risk" of the existence of residually privileged information being disclosed as a result of the ex parte interviews. Finally, the court stated that it was "unconvinced that there is a significant risk of undue influence on the subsequent treating physicians by ex parte interviews with defense counsel." The Baileys then petitioned this court under C.A.R. 21 asking us to vacate the trial court's order granting the requested ex parte interviews with the Craig and St. Mary's treaters.[1] We issued a rule to show cause. We now make the rule absolute and remand for further proceedings consistent with this opinion.

## II. Standard of Review

¶8    Relief from a trial court's discovery order under C.A.R. 21 is appropriate only where "the normal appellate process would prove inadequate." In Re P.W. v. Children's Hosp., 2016 CO 6, ¶ 12, 364 P.3d 891, 895 (quoting Warden v. Exempla, Inc., 2012 CO 74, ¶ 16, 291 P.3d 30, 34). "When a trial court's order involves records which a party claims are protected by a statutory privilege, as here, an immediate review is appropriate because the damage that could result from disclosure would occur regardless of the ultimate outcome on appeal from a final judgment." Ortega v. Colorado Permanente Group, P.C., 265 P.3d 444, 447 (Colo. 2011) (citing Clark

---

[1] As stated above, Defendants did not object before the trial court to the Baileys' use of privilege logs to protect the alleged residually privileged information held by the Craig and St. Mary's treaters, nor did the trial court make any ruling regarding the sufficiency or deficiency of those privilege logs. Therefore, the only issue before us is the validity of the trial court's order granting Defendants' request for ex parte interviews with the Craig and St. Mary's treaters.

v. Dist. Court, 668 P.2d 3, 7 (Colo. 1983)). Therefore, we now invoke our original jurisdiction under C.A.R. 21 to review the trial court's order to protect from the possible irreparable harm that would occur from an unwarranted disclosure of Bailey's medical information. In reviewing a discovery ruling under C.A.R. 21, we review a trial court's decision for an abuse of discretion. Id. (citing Cardenas v. Jerath, 180 P.3d 415, 420 (Colo. 2008)).

## III. Analysis

¶9 C.R.C.P. 26 governs the general rules of discovery in a civil proceeding. The rules outlined in C.R.C.P. 26 are intended to eliminate surprise at trial, enable the parties to discover relevant evidence, and promote the settlement of cases in an efficient manner. Cardenas, 180 P.3d at 420. C.R.C.P. 26(b)(1) establishes a broad scope for discovery, allowing discovery of "any matter, not privileged, that is relevant to the claim or defense of any party and proportional to the needs of the case." In this case, we are required to consider the primary narrowing element of that rule: privileged matter.

¶10 In a brief order, the trial court concluded that the Baileys could not assert the physician–patient privilege with regard to the non-party Craig and St. Mary's treaters because those treaters were "in consultation with" Defendants such that the privilege was removed under section 107(1)(d)(II).[2] We disagree. Relying on our decision in Reutter v. Weber, 179 P.3d 977 (Colo. 2007), we hold that section 107(1)(d)(II) did not

---

[2] Section 13-90-107(1)(d)(I) is clearly not applicable to the Craig and St. Mary's treaters as none of those medical providers are defendants in this matter.

7

remove Bailey's communications with the Craig and St. Mary's treaters from the protection of the physician–patient privilege. However, it is possible that the Baileys impliedly waived their claim of physician–patient privilege under the implied waiver doctrine. Accordingly, we vacate the trial court's order allowing ex parte interviews with the Craig and St. Mary's treaters, and we remand this matter to the trial court to consider whether the Baileys impliedly waived the physician–patient privilege for those treaters. On remand, if the trial court concludes that the Baileys did impliedly waive their physician–patient privilege with regard to the Craig and St. Mary's treaters and is still inclined to permit ex parte interviews of those treaters, the trial court should reevaluate whether it needs to take any measures to (1) protect residually privileged information held by those treaters and (2) ensure that Defendants do not exert undue influence over those treaters during the ex parte interviews.

### A. The Consultation Exception to the Physician–Patient Privilege

¶11 In granting Defendants' request to conduct ex parte interviews with the Craig and St. Mary's treaters, the trial court concluded that those treaters were "in consultation with" Defendants because the Craig and St. Mary's treaters were engaged in a "uniform course of treatment" with Defendants.[3] If the Craig and St. Mary's treaters were in consultation with Defendants, then, under section 107(1)(d)(II), Bailey's communications with them would not be protected by the physician–patient privilege.

---

[3] The trial court order seems to straddle the divide between founding its conclusion on the statutory exception to the physician–patient privilege in section 107(1)(d)(II) and the implied waiver doctrine. However, we view the order as an application of section 107(1)(d)(II), not the implied waiver doctrine.

We addressed this precise statutory provision in Reutter, 179 P.3d at 978–79, which the Baileys and various amici curiae now urge us to rework. We decline that invitation and instead conclude that, under the framework established in Reutter, the Craig and St. Mary's treaters were not in consultation with Defendants for the purposes of section 107(1)(d)(II). As a result, all of Bailey's communications with those non-party medical providers are privileged, unless Bailey consented to their disclosure.

¶12    The proponent of a claim of privilege bears the burden of establishing that the privilege applies. Alcon v. Spicer, 113 P.3d 735, 739 (Colo. 2005). Consequently, because section 107(1)(d)(II) excepts normally privileged information from the scope of the statutory physician–patient privilege, the proponent of a claim of privilege must establish that the exception itself is inapplicable. Reutter, 179 P.3d at 981.

¶13    In Reutter, we considered the meaning of the phrase "in consultation with" in section 107(1)(d)(II) for the first time. Id. We rejected the narrow reading proposed by the plaintiffs in that case, which would have had us read the term to include medical providers who only offer advice, but not those who both offer advice and treat the plaintiff–patient. Id. That said, we did not read section 107(1)(d)(II) to be so broad as to include all future medical providers of a plaintiff. See id. Instead, we determined that section 107(1)(d)(II) recognizes that medicine is not practiced alone but is, in many cases, practiced in a collaborative fashion with other practitioners. Id. ("While one physician might be the primary medical provider, other medical providers typically play a role in the patient's treatment."). As a result, we held that a non-party medical provider is in consultation with the defendant medical provider for the purposes of

section 107(1)(d)(II) if the party and non-party providers "collectively and collaboratively assess and act for a patient by providing a unified course of medical treatment." Id. Applying that standard, we concluded that the non-party medical providers were in consultation with the defendant medical providers because of the particularly integrated care that the plaintiff received from both the defendant and non-party medical providers. See id. at 981–82. Specifically, we noted that the non-party medical providers were employed by the same facility as the defendant medical providers, and that all care was provided over just a few days while the plaintiff was being treated at that single facility. Id. at 979.

¶14 Here, the trial court concluded that the Craig and St. Mary's treaters were engaged in a uniform course of treatment of Bailey along with Defendants—and were therefore "in consultation with" them—because the Craig and St. Mary's treaters had provided treatment only "for complaints and conditions arising out of the original alleged acts of negligence." However, that conclusion misstates the inquiry. Instead, as we outlined in Reutter, a non-party medical provider is in consultation with a defendant medical provider when they provide care "collectively and collaboratively." Id. at 981.

¶15 In this case, the Craig and St. Mary's treaters provided no collective or collaborative care with Defendants. There was no exchange of medical records. There was no discussion of diagnoses or treatment options. In fact, there appears to have been no communication between the Defendant and non-party medical providers whatsoever. On these facts, we cannot conclude that the non-party medical providers

10

acted in such a collective and collaborative way as to be considered in consultation with the Defendant medical providers. We hold that the Craig and St. Mary's treaters were not in consultation with Defendants and, as a result, Bailey's communications with the Craig and St. Mary's treaters are privileged unless she consented to their disclosure. Consequently, the trial court abused its discretion when it authorized Defendants to conduct ex parte interviews with the Craig and St. Mary's treaters on the grounds that section 107(1)(d)(II) rendered Bailey's communications with those treaters outside the protections of the physician–patient privilege.

## B. Implied Waiver

¶16    Although we conclude that the Craig and St. Mary's treaters were not in consultation with Defendants, therefore making section 107(1)(d)(II) inapplicable, the Baileys may still have impliedly waived the protection of the physician–patient privilege as it pertains to information relevant to the Baileys' claimed medical malpractice.

¶17    Before reaching our discussion of implied waiver, however, we briefly clarify our decision in Ortega. In Ortega, we stated in a footnote that "cases that arise in the medical malpractice context invoke section 107(1)(d)(I)'s statutory exception to the physician–patient privilege rather than the implied waiver doctrine." 265 P.3d at 448 n.1. That statement does not control our decision today. Ortega primarily involved the application of section 107(1)(d)(I) in the context of a dispute regarding the information held by a defendant medical provider. 265 P.3d at 446–47. In this case, however, the dispute arises with regard to non-party medical providers and the relationship those

11

non-party medical providers had with Bailey. Therefore, notwithstanding our decision in Ortega, a plaintiff may still impliedly waive the physician–patient privilege as it applies to information held by a non-party medical provider.

¶18    More broadly, a patient may consent to the disclosure of information normally protected by the physician–patient privilege. Clark, 668 P.2d at 8. We have held that consent may be given explicitly, but also implicitly through an implied waiver of the privilege. Samms v. Dist. Court, 908 P.2d 520, 524 (Colo. 1995) (citing Clark, 668 P.2d at 10) ("[I]mplied waiver constitutes consent for purposes of section 13-90-107(1)(d)."). The implied waiver doctrine is rooted in the notion that a party who puts their medical or physical condition at issue in a lawsuit cannot then shield the information related to that condition from discovery. Specifically, "a plaintiff in a personal injury case impliedly waives the physician–patient privilege with respect to matters known to the physician that are relevant in determining the cause and extent of injuries which form the basis for a claim for relief." Id. at 525 (citing Clark, 668 P.2d at 10). Because an implied waiver determination necessarily depends on the nature and extent of a particular and unique mental or physical condition, we have repeatedly recognized that such a determination will vary on a case-by-case basis. E.g., id. Importantly, an implied waiver covers only the extent and context of the condition and the subsequent damages that form the basis of the claim for relief; it does not amount to a general disclosure of the patient's entire relationship with the physician in question. Alcon, 113 P.3d at 739.

12

¶19 As stated previously, the party asserting protection from a privilege bears the burden of establishing the applicability of that privilege. Id. However, in the implied waiver context, once the privilege has been established, the party arguing for a finding of implied waiver must carry the burden of showing that waiver. Id.

¶20 Here, Defendants assert that the trial court's statement that the non-party medical providers had "only treat[ed] [Bailey] for complaints and conditions arising out of the original alleged acts of negligence" amounted to a finding of implied waiver. However, that statement is couched in the trial court's conclusion that the Craig and St. Mary's treaters were engaged in a "unified course of treatment" with Defendants; thus, the trial court's decision rested on section 107(1)(d)(II), not implied waiver. Because it is unclear from the record before us whether the Baileys impliedly waived their physician–patient privilege with regard to the Craig and St. Mary's treaters, we remand this case to the trial court for a determination of that issue.

¶21 On remand, if the trial court finds that the Baileys did impliedly waive the physician–patient privilege, the trial court should, prior to granting Defendants' request for ex parte interviews, determine whether it needs to institute any measures to (1) protect against inadvertent discovery of residually privileged information held by the Craig and St. Mary's treaters, and (2) ensure that the non-party medical providers are not subject to undue influence in the course of those ex parte interviews.

## IV. Conclusion

¶22 Because the Craig and St. Mary's treaters were not in consultation with Defendants, the trial court abused its discretion in concluding under

13

section 107(1)(d)(II) that Bailey's communications with those treaters were not protected by the physician–patient privilege. However, the trial court should consider on remand whether the Baileys waived that privilege under the implied waiver doctrine. If the trial court finds that the Baileys did impliedly waive their physician–patient privilege as it pertains to the Craig and St. Mary's treaters, the trial court should also reconsider whether there is a risk of residually privileged information being disclosed during the ex parte interviews and whether the Craig and St. Mary's treaters could be subject to undue influence during those ex parte interviews. Accordingly, we make our rule to show cause absolute and remand this case to the trial court for further proceedings consistent with this opinion.

**JUSTICE HART** does not participate.