1
 2025 CO 15 In Re Jina Garcia, individually and on behalf of others similarly situated, Plaintiff v. Centura Health Corporation, Defendant No. 24SA257
Supreme Court of Colorado, En Banc
April 14, 2025

 Original Proceeding Pursuant to C.A.R. 21 District Court,
 City and County of Denver, Case No. 17CV32645 Honorable
 Kandace C. Gerdes, Judge

 Order
 Made Absolute

 Attorneys for Plaintiff: Wilhite, Rose, & Roberts, P.C.
Robert E. Caldwell, Jr. Denver, Colorado, Singleton
 Schreiber, LLP Kevin S. Hannon Denver, Colorado

 Attorneys for Defendant: McConnell Van Pelt, LLC Traci L. Van
 Pelt Jonathan J. Corrigan Denver, Colorado, Wheeler Trigg
 O'Donnell LLP Galen D. Bellamy Denver, Colorado

 Attorneys for Respondent District Court, City and County of
 Denver: Philip J. Weiser, Attorney General Kyle M. Holter,
 Assistant Attorney General Denver, Colorado

 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined.

 OPINION

 GABRIEL JUSTICE

 ¶1
This case, which involves claims for alleged violations of
 the hospital lien statute, section 38-27-101, C.R.S. (2024),
 comes before us a second time. After the district court
 ordered that Jina Garcia respond to substantial discovery
 requests propounded by Centura Health Corporation, we granted
 and made a rule to show cause absolute. Garcia v. Centura
 Health Corp., 547 P.3d 1152 (Colo. 2024) (mem.). In our
 order, we remanded this case with instructions that the
 district court determine and make specific findings regarding
 whether the discovery sought by Centura was relevant to the
 claims and defenses in this case, expressly directing the
 district court to keep in mind that this lawsuit involves
 wrongful lien claims for which statutory damages are
 established by law. Id. at 1152.

 ¶2
 On remand, the district court again ordered that Garcia
 respond to substantial discovery requests propounded by
 Centura, prompting Garcia to seek further C.A.R. 21 relief.
In her petition, she argued that the district court violated
 our prior mandate and abused its discretion in ordering the
 discovery at issue. We issued an order to show cause.

 ¶3
We now conclude that the district court abused its discretion
 in ordering the discovery at issue and, therefore, Garcia is
 not required to respond to those discovery requests. In light
 of this determination, we need not address Garcia's
 contention that the district court did not comply with our
 remand order.

 ¶4
 Accordingly, we make our order to show cause absolute, and we
 remand this case to the district court for further
 proceedings consistent with this opinion.

 I.
Facts and Procedural History

 ¶5
 Garcia received treatment from St. Anthony North Hospital,
 which is operated and controlled by Centura, as a result of
 injuries that she allegedly sustained in a motor vehicle
 accident. When Garcia was admitted to the hospital, she
 informed personnel there that she had both Medicare and
 Medicaid coverage and that her automobile insurance carrier
 was Progressive Insurance.

 ¶6
 After determining that Garcia's injuries were the result
 of the wrongful acts of another (or others), Centura asserted
 a hospital lien against Garcia in the amount of $2,170.35,
 reflecting the amount of medical services and treatment
 rendered at St. Anthony North Hospital as a result of the
 accident in which Garcia had been involved. It appears
 undisputed that Centura did not bill Medicare prior to
 asserting this lien.

 ¶7
 Garcia, on behalf of herself and others similarly situated,
 subsequently filed a putative class action lawsuit against
 Centura, alleging that Centura had violated section 38-27-101
 by filing its lien against Garcia and the other class members
 before billing Medicare. Pursuant to the statute, Garcia
 sought damages of twice the amount of the asserted lien. The
 district court subsequently certified a class consisting of
 "[a]ll Colorado residents who had Medicare as their
 primary medical

 insurance at the time [Centura] provided them with services
 for injuries resulting from the negligence or other wrongful
 acts of another person and against whom [Centura] asserted a
 hospital lien without first billing Medicare."

 ¶8
 As pertinent here, Centura requested substantial discovery
 from Garcia, including, among other things, medical records,
 other documents relating to her claimed damages,
 attorney-client communications, settlement agreements
 relating to the underlying accident, documents relating to
 fault in the underlying accident, and financial records
 establishing the damages caused by the hospital lien asserted
 against her. Garcia objected to this discovery, asserting,
 among other things, that it sought information that was not
 related to the claims and defenses of any party; was not
 proportional to the needs of the case; was overboard, unduly
 burdensome, and irrelevant; invaded her right to privacy;
 improperly sought attorney mental impressions; and sought
 information protected by the attorney-client,
 physician-patient, and attorney work-product privileges.

 ¶9
 By order dated January 17, 2024, the district court required
 Garcia to provide much of the discovery that Centura had
 requested. Garcia then sought relief in this court under
 C.A.R. 21, and we issued an Order and Rule to Show Cause.

 ¶10
 After receiving substantial briefing from the parties, we
 issued an order making our Rule to Show Cause Absolute and
 remanding this case to the district court for further
 proceedings. Our order provided, in pertinent part, as
 follows:

2. In ordering Petitioner to respond, over her objections, to
 the discovery requests at issue, the District Court did not
 adequately conduct the analyses required by the applicable
 rules and this Court's case law to support its order.

3. Accordingly, the District Court's January 17, 2024
 order is VACATED, and this case is remanded with instructions
 that the District Court reconsider the discovery matters
 before it as follows:

A. The District Court shall determine and make specific
 findings regarding whether the discovery sought by Respondent
 is relevant to the claims and defenses in this case, keeping
 in mind that this lawsuit involves claims of wrongful liens
 for which statutory damages are established by law.
Accordingly, relevance is not established by the fact that
 the discovery sought is typical of the types of discovery
 requested in motor vehicle accident cases.

B. If the District Court finds that the discovery sought by
 Respondent is relevant to the claims and defenses in this
 case, and if the discovery sought seeks private and
 privileged medical and financial information, attorney
 work-product, and other private and confidential information,
 then the District Court shall perform the balancing test
 required by In re District Court, 256 P.3d 687
(Colo. 2011), and shall determine and make specific findings
 regarding whether to order the requested discovery over the
 privacy and confidentiality concerns asserted by Petitioner.

C. After conducting the foregoing analyses, the District
 Court shall determine and make specific findings regarding
 whether the discovery sought by Respondent is proportional to
 the needs of this wrongful lien action.

Garcia, 547 P.3d at 1152.

 ¶11
 On remand, the district court convened a hearing and, after
 considering the parties' arguments, issued an order
 requiring Garcia to respond to certain of Centura's
 discovery requests. These requests sought, among other
 things, information concerning (1) any damages or injuries
 that Garcia had suffered as a result of the lien; (2)
 payments made by Garcia or on her behalf for medical services
 provided by St. Anthony North Hospital as a result of the
 underlying motor vehicle accident, including all
 communications related thereto and any Medicare liens
 relating to such medical services; (3) the facts and
 circumstances involving the underlying accident, including
 documents and communications relating to evaluations and
 determinations of the fault of any driver; (4) police
 reports, statements, settlement agreements or other
 resolutions of legal claims relating to the accident, insurer
 documents, and Garcia's claims for damages arising from
 the accident (as well as any claims made against her); (5)
 Garcia's retention of an attorney in connection with the
 accident; (6) admissions of liability related to the
 accident; and (7) any police citations issued as a result of
 the accident.

 ¶12
 Garcia again sought relief pursuant to C.A.R. 21, and we
 issued an order to show cause.

 II.
Analysis

 ¶13
We begin by discussing our jurisdiction under C.A.R. 21 and
 the discovery principles that apply here, including the
 pertinent standard of review. Next, we

 address the hospital lien statute and Garcia's claims
 thereunder. We then turn to the question of whether the
 district court abused its discretion in ordering Garcia to
 respond to the discovery requests at issue.

 A.
Original Jurisdiction

 ¶14
 The exercise of our original jurisdiction under C.A.R. 21
 rests within our sole discretion. Fox v. Alfini,
 2018 CO 94, ¶ 15, 432 P.3d 596, 600. An
 original proceeding under C.A.R. 21 is an extraordinary
 remedy that is limited in both its purpose and availability.
Id.

 ¶15
 Although discovery orders are usually interlocutory in nature
 and therefore are reviewable only on appeal, we have
 exercised our discretion under C.A.R. 21 to review whether a
 district court abused its discretion in circumstances in
 which an appellate remedy would be inadequate. Id.
We have also exercised our original jurisdiction under C.A.R.
 21 when a pretrial discovery ruling is so broad and
 burdensome that it "places a party at a significant
 disadvantage litigating the merits of the controversy"
 and renders any appellate remedy inadequate. DCP
 Midstream, LP v. Anadarko Petroleum Corp., 2013 CO 36,
 ¶ 22, 303 P.3d 1187, 1193.

 ¶16
 Here, as noted above, a number of the discovery requests at
 issue implicate potentially private and confidential medical
 and financial information, as well as matters protected by
 the attorney-client and work-product privileges. Because the
 improper disclosure of such information could not adequately
 be remedied on

 appeal, this alone supports the exercise of our original
 jurisdiction. See Ortega v. Colo. Permanente Med. Grp.,
 P.C., 265 P.3d 444, 447 (Colo. 2011) (invoking our
 C.A.R. 21 jurisdiction when the discovery order at issue
 involved records that the plaintiff claimed were protected by
 a statutory privilege and, therefore, a direct appeal would
 not have been adequate to remedy the erroneous disclosure of
 such records).

 ¶17
 In addition, the discovery requests at issue are substantial
 and, in Garcia's view, wholly irrelevant to the issues
 involved in this case, thereby placing a significant and
 needless burden on her. Moreover, this is the second time
 that these same issues are before us. And, in our view,
 ongoing litigation over these issues will serve no purpose
 other than to increase the cost of litigating this case and
 to delay further the final resolution of a case that has
 already been pending for over seven years.

 ¶18
 In these circumstances, we deem it appropriate to exercise
 our jurisdiction over this matter.

 B.
Applicable Principles of Discovery

 ¶19
 C.R.C.P. 26 sets forth the general rules governing discovery
 in civil proceedings. Bailey v. Hermacinski, 2018 CO
 14, ¶ 9, 413 P.3d 157, 160. These rules are intended to
 eliminate surprise at trial, enable the parties to obtain
 relevant evidence, and promote the efficient settlement of
 cases. Id.

 ¶20
 Subject to the limitations and considerations set forth
 elsewhere in the civil rules, C.R.C.P. 26(b)(1) allows
 discovery

regarding any matter, not privileged, that is relevant to the
 claim or defense of any party and proportional to the needs
 of the case, considering the importance of the issues at
 stake in the action, the amount in controversy, the
 parties' relative access to relevant information, the
 parties' resources, the importance of the discovery in
 resolving the issues, and whether the burden or expense of
 the proposed discovery outweighs its likely benefit.

Information within the scope of discovery, however, need not
 be admissible in evidence to be discoverable. Id.

 ¶21
 Although the scope of allowable discovery under C.R.C.P. 26
 is broad, it is not unlimited. Dist. Ct., 256 P.3d
 at 690. As C.R.C.P. 26(b)(1) itself makes clear, requested
 discovery must be proportional to the needs of the case,
 considering the factors set forth in that rule. See also
 DCP Midstream, ¶ 34, 303 P.3d at 1197 (noting that
 C.R.C.P. 26(b) requires trial courts to take an active role
 in managing discovery and that when faced with an objection
 to the scope of proposed discovery, a trial court must
 determine the discovery's proper scope in light of the
 reasonable needs of the case and must tailor discovery to
 those needs).

 ¶22
 As the comments to the 2015 amendments to C.R.C.P. 26
 explained, "[T]he concept is to allow discovery of what
 a party/lawyer needs to prove its case, but not what
 a party/lawyer wants to know about the subject of a
 case." C.R.C.P. 26 cmt. 14. Accordingly, "trial
 judges have and must exercise discretion, on a

 case-by-case basis, to effectuate the purposes of these
 rules," C.R.C.P. 26 cmt. 15, including C.R.C.P.
 1(a)'s mandate that the rules be "liberally
 construed, administered, and employed by the court and the
 parties to secure the just, speedy, and inexpensive
 determination of every action."

 ¶23
 In addition to the foregoing limitations, when a party
 opposes discovery on the ground that it would violate their
 right to privacy or implicate confidential information, a
 court "must give the discovery request special
 consideration and balance an individual's right to keep
 personal information private with the general policy in favor
 of broad disclosure." Dist. Ct., 256 P.3d at
 690-91. We outlined the applicable test governing these
 circumstances as follows:

The party requesting the information must always first prove
 that the information requested is relevant to the subject of
 the action. Next, the party opposing the discovery request
 must show that it has a legitimate expectation that the
 requested materials or information is confidential and will
 not be disclosed. If the trial court determines that there is
 a legitimate expectation of privacy in the materials or
 information, the requesting party must prove either that
 disclosure is required to serve a compelling state interest
 or that there is a compelling need for the information. If
 the requesting party is successful in proving one of these
 two elements, it must then also show that the information is
 not available from other sources. Lastly, if the information
 is available from other sources, the requesting party must
 prove that it is using the least intrusive means to obtain
 the information.

Id. at 691-92.

 ¶24
We review a district court's discovery orders for an
 abuse of discretion. Fox, ¶ 17, 432 P.3d at
 600. A district court abuses its discretion when its ruling
 is

"manifestly arbitrary, unreasonable, or unfair, or based
 on a misapprehension of the law." Cath. Health
 Initiatives Colo. v. Earl Swensson Assocs., Inc., 2017
 CO 94, ¶ 8, 403 P.3d 185, 187.

 C.
Hospital Lien Statute and
 Garcia's Claims

 ¶25
Section 38-27-101 provides in pertinent part:

(1) Before a lien is created, every hospital duly
 licensed by the department of public health and environment .
 . . which furnishes services to any person injured as the
 result of the negligence or other wrongful acts of another
 person . . . shall submit all reasonable and necessary
 charges for hospital care or other services for payment to
 the property and casualty insurer and the primary medical
 payer of benefits available to and identified by or on
 behalf of the injured person . . . .

. . . .

(4) After a hospital satisfies the requirements of this
 section, and subject to this article, the hospital shall
 have a lien for all reasonable and necessary charges for
 hospital care upon the net amount payable to the injured
 person . . . out of the total amount of any recovery or sum
 had or collected, or to be collected, whether by judgment,
 settlement, or compromise, by the person . . . as damages on
 account of the injuries.

. . . .

(7) An injured person who is subject to a lien in violation
 of this section may bring an action in a district court to
 recover two times the amount of the lien attempted to be
 asserted.

(Emphases added.)

 ¶26
 A division of our court of appeals has observed that the
 General Assembly's intent in adopting this statute and
 the amendments thereto was "to protect insured

 accident victims, including Medicare recipients, from
 hospital liens." Garcia v. Centura Health
 Corp., 2020 COA 38, ¶ 26, 490 P.3d 629, 635. Along
 the same lines, we have observed that the sponsors of the
 2015 amendments to the statute made clear that the bill was
 intended to prevent hospitals from filing liens against
 patients before the patients or their insurers had been given
 an opportunity to pay. Harvey v. Cath. Health
 Initiatives, 2021 CO 65, ¶ 30, 495 P.3d 935, 941.
We have further observed that the legislative history
 revealed the legislature's intent "to protect
 accident victims from the aggressive lien practices that some
 hospitals had employed" and that although the statute
 continues to protect a hospital's right to be paid for
 the care that it provides, it also protects individuals from
 a second injury, namely, the lien. Id. at ¶ 32,
 495 P.3d at 941. Lastly, as pertinent here, we have
 determined that for purposes of section 38-27-101(1), when
 Medicare is a patient's primary health insurer, the
 statute "requires a hospital to bill Medicare for the
 medical services provided to the patient before asserting a
 lien against that patient." Id. at ¶ 4,
 495 P.3d at 937.

 ¶27
 In light of the foregoing legal principles, Garcia now
 contends that Centura violated section 38-27-101 by asserting
 a lien against her and others similarly situated before
 billing Medicare, and she further alleges that Centura has
 routinely done so. Accordingly, she is seeking, on behalf of
 herself and the class that she

 represents, two times the amount of the liens asserted
 against her and the other class members.

 D. The
 Discovery Requests at Issue

 ¶28
 Having thus set forth the applicable law and Garcia's
 claims in this case, we turn to the discovery requests at
 issue. Garcia asserts that the district court abused its
 discretion by ordering her to reveal certain attorney-client
 privileged communications and to produce attorney
 work-product and other documents relating to (1) the
 underlying motor vehicle accident and fault for the accident,
 (2) her asserted damages, (3) insurer documents, (4)
 settlement agreements, (5) payments for medical services
 provided by Centura, and (6) confidential medical and
 financial information. In her view, none of these requests
 are relevant to the claims or defenses of any party, and none
 are proportional to the needs of this case. We agree.

 ¶29
 The legal and factual issues in this case are narrow: Garcia
 claims that Centura violated the lien statute by asserting
 liens against her and the members of the class without first
 billing Medicare. As a result, Garcia seeks, on behalf of
 herself and the other members of the class, two times the
 face amount of the liens asserted. This case is not a
 litigation on the merits of the underlying motor vehicle
 accident. Rather, the principal factual issues presented by
 Garcia's claims appear to be (1) whether Centura asserted
 liens against Garcia and the other members of

 the class, which is defined to include Colorado residents who
 had Medicare as their primary medical insurance at the time
 Centura provided them with services for injuries resulting
 from the negligence or other wrongful acts of another; (2)
 the amount of those liens; and (3) whether Centura billed
 Medicare before asserting those liens.

 ¶30
 Notwithstanding the foregoing, Centura asserts that the
 district court properly authorized the discovery requests at
 issue because the information sought is relevant to (1)
 Centura's anticipated motion to decertify the class; (2)
 whether our decision in Harvey, ¶ 4, 495 P.3d
 at 937 (concluding that for purposes of section 38-27-101(1),
 when Medicare is a patient's primary health insurer, a
 hospital must bill Medicare for the medical services provided
 to the patient before asserting a lien against that patient),
 should be applied retroactively; (3) whether Garcia was an
 "injured person" under the hospital lien statute
 and whether her injuries were due to the negligence or other
 wrongful acts of another person; and (4) the net amount
 payable to Centura, which Centura contends is the amount on
 which it attempted to assert its lien. We are unpersuaded and
 address each of these points in turn.

 1.
Relevance to Class Decertification

 ¶31
 With respect to Centura's anticipated motion to decertify
 the class, Centura contends that its requested discovery is
 relevant to whether a class action is

 superior to other methods for the fair and efficient
 adjudication of this case, whether Garcia's claims are
 typical of the claims of the class, and whether common
 questions of law or fact predominate over questions affecting
 only individual class members, all as required by C.R.C.P.
 23(a) and C.R.C.P. 23(b)(3).

 ¶32
 Specifically, Centura asserts that under Wilcox v.
 Commerce Bank of Kansas City, 474 F.2d 336, 345-47 (10th
 Cir. 1973), the requirement of superiority is not satisfied
 when a statutory penalty would be enormous in comparison to
 the actual harm to the class members. In that case, the
 defendant alleged that its penalty exposure could exceed one
 billion dollars. Id. at 340.

 ¶33
 As an initial matter, we question Wilcox's
 ongoing vitality. The Tenth Circuit does not appear to have
 cited that case since 1978. Moreover, in the time since
 Wilcox was decided, the Supreme Court has twice
 rejected arguments that a federal court should decline to
 certify a class because a statutory scheme could be deemed to
 lead to unfair or unintended results. See Califano v.
 Yamasaki, 442 U.S. 682, 700 (1979) ("In the absence
 of a direct expression by Congress . . ., class relief is
 appropriate in civil actions brought in federal court . . .
 ."); Reiter v. Sonotone Corp., 442 U.S. 330,
 344-45 (1979) (noting that concerns as to the cost of
 defending a consumer class action seeking treble damages are
 "policy considerations more properly addressed to
 Congress than to this Court"). In accordance with the
 Supreme Court's reasoning, we perceive nothing in the
 hospital lien statute that

 indicates a legislative desire to preclude class actions in
 cases arising thereunder, and Centura's concern for the
 effect of that statute appears to be a matter of policy best
 directed to our General Assembly.

 ¶34
 Even if Wilcox were still good law, however, we are
 not convinced that it applies here. Notwithstanding
 Centura's assumption to the contrary, nothing in the
 hospital lien statute suggests that the statutory damages
 allowed constitute a penalty, which, if grossly excessive or
 oppressive, could implicate due process concerns. See
Dewey v. Hardy, 917 P.2d 305, 309 (Colo.App. 1995). Nor
 has Centura cited any applicable authority suggesting that
 statutory damages become a penalty merely because a large
 number of people can assert them in a class action. And, in
 any event, we are not persuaded that the potential damages in
 this case are so astronomical (compared with the billion
 dollar exposure in Wilcox) to render a class action
 an inferior way to proceed. To the contrary, this case
 appears to be representative of the very kind of case for
 which the class action mechanism was created: the injury to
 individual plaintiffs (e.g., two times $2,170.35, in
 Garcia's case) would likely be too small to justify the
 costs of proceeding individually in a case like this. See
Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997)
("The policy at the very core of the class action
 mechanism is to overcome the problem that small recoveries do
 not provide the incentive for any individual to bring a solo
 action prosecuting his or her rights. A class action solves
 this problem by

 aggregating the relatively paltry potential recoveries into
 something worth someone's (usually an attorney's)
 labor.") (quoting Mace v. Van Ru Credit Corp.,
 109 F.3d 338, 344 (7th Cir. 1997)); Colo.
 Cross-Disability Coal. v. Taco Bell Corp., 184 F.R.D.
 354, 362 (D. Colo. 1999) (concluding that a class action was
 the superior method of managing the dispute before the court
 because the matter involved a large number of class members
 who had relatively small amounts of individual damages and,
 in such circumstances, denial of a class action would
 effectively have denied such claimants judicial redress).

 ¶35
 Centura's arguments that the discovery at issue is
 relevant to its anticipated challenges to the typicality of
 Garcia's claims and the predominance of common issues of
 law and fact fare no better. Centura observes that section
 38-27-101(1) concerns liens on persons injured as a result of
 the negligence or other wrongful acts of another person. From
 this premise, it contends that it requires the discovery at
 issue to determine whether Garcia was, in fact, injured and
 whether her injuries were caused by others. If Garcia was not
 injured, or if she were the party at fault, the argument
 goes, then she would not have a viable claim under the
 statute and her claims would not be typical of those of the
 other class members. Similarly, Centura asserts that because
 it will ultimately need to assess the questions of injury and
 fault for each class member, common issues of law and fact do
 not predominate here.

 ¶36
 Centura, however, ignores the facts that its own records
 indicate that it had determined that Garcia had been injured
 through the negligence of another and that under the plain
 language of section 38-27-101(1), it was not permitted to
 assert a lien unless it furnished services to a person who
 was injured as the result of the negligence or wrongful acts
 of another and then submitted its reasonable and necessary
 charges for payment to the property and casualty insurer and
 the primary medical payer of benefits. Under section
 38-27-101(4), it is only "[a]fter a hospital satisfies
 the requirements of [section 38-27-101]" that it has a
 lien. If the hospital asserted a lien against someone who was
 not injured or who was not injured as a result of the
 negligence of another, then the hospital would have had no
 basis under the hospital lien statute to assert that lien at
 all. Garcia's claims thus correctly rest on the premise
 that she and others similarly situated were injured by the
 negligence or other wrongful acts of another, and therefore,
 whether Garcia was injured by another's negligence or
 wrongful acts is not at issue here, where Centura filed its
 lien based on that essential factual premise.

 ¶37
 Accordingly, on the facts of this case, the discovery that
 Centura seeks is not relevant to superiority, typicality, or
 predominance, as those terms are used in the class action
 context.

 2.
Relevance to the Retroactivity of Harvey

 ¶38
 With respect to whether our decision in Harvey
 should be applied retroactively, Centura contends that the
 discovery at issue is necessary to allow it to conduct the
 three-part analysis for retroactivity outlined in Chevron
 Oil Co. v. Huson, 404 U.S. 97, 106-07 (1971). Under the
 test set forth in that case, in determining whether a
 judicial decision is to be applied retroactively, courts are
 to consider (1) whether the decision established a new
 principle of law; (2) the prior history of the rule in
 question, its purpose and effect, and whether retrospective
 operation would further or hinder its operation; and (3) any
 inequities that would result from the retroactive application
 of the decision. Id. Centura asserts that it
 requires discovery concerning Garcia's actual damages
 from the lien to assess whether the retroactive application
 of Harvey would further or hinder the lien
 statute's purpose of preventing harm from improper liens.
Centura further argues that it requires discovery regarding
 the damages that Garcia claimed vis-à-vis the
 tortfeasor because, in Centura's view, this would show
 that Garcia used billed charges, as opposed to amounts paid
 by her insurer, as a measure of her damages. According to
 Centura, this, in turn, would show the inequity of
 Harvey's retroactive application. For a number
 of reasons, we are unpersuaded.

 ¶39
 First, it is not clear to us that applying Harvey,
 which simply interpreted the hospital lien statute and did
 not alter any prior law, to this still-pending case would
 amount to the retroactive application of a new principle of
 law. To the contrary, applying Harvey here amounts
 to nothing more than applying current law to the facts of a
 pending case.

 ¶40
 Second, even if Harvey's application could be
 deemed to be retroactive such that the Chevron
 factors would apply, it is not self-evident to us that this
 would make the discovery at issue relevant to any claim or
 defense at issue in this case, particularly given that the
 question of the retroactive application of a judicial
 decision presents a question of law, not a question of fact.
McDonald v. People, 2024 CO 75, ¶ 7, 560 P.3d
 412, 417; People v. Cooper, 2023 COA 113, ¶ 7,
 544 P.3d 679, 681.

 ¶41
 Third, contrary to Centura's assertion that it needs
 discovery regarding Garcia's actual damages to determine
 whether Harvey's application would further or
 hinder the hospital lien statute's operation, as noted
 above, the statute's purpose was to ensure that hospitals
 give patients or their insurers an opportunity to pay before
 asserting a lien against the patients. We cannot discern how
 the statute's purpose would be hindered by applying our
 decision in Harvey here because our determination
 that Medicare can be a primary medical payer of benefits
 furthers the legislative intent that a hospital bill
 a patient's insurers before asserting a lien.

 ¶42
 Finally, Centura's assertion that it requires discovery
 concerning whether Garcia sought damages from the tortfeasor
 based on the amount she was billed for services, as opposed
 to the amount that her insurers actually paid, and that such
 facts would show the inequity of applying Harvey in
 this case, is nothing more than an effort to relitigate the
 question of whether an injured plaintiff's damages should
 be measured by the amounts paid by an insurer to the medical
 provider, as opposed to the amounts billed by the medical
 provider. We, however, settled this question over a decade
 ago. See Wal-Mart Stores, Inc. v. Crossgrove, 2012
 CO 31, ¶ 25, 276 P.3d 562, 568 (concluding that the
 amount paid by an insurer is inadmissible under the
 pre-verdict evidentiary component of the collateral source
 rule).

 ¶43
 For these reasons, we conclude that the discovery at issue is
 not relevant to any argument regarding the retroactive
 application of our decision in Harvey.

 3.
Relevance to
Whether Garcia
Was Injured
by Another's
Negligence

 ¶44
 With respect to Centura's contention that it requires the
 discovery at issue to determine whether Garcia was an injured
 person under the statute and whether any injury was caused by
 the negligence or other wrongful act of another person, we
 are again unpersuaded. For the reasons discussed above, by
 filing its lien, Centura necessarily determined (as its own
 records confirm) that Garcia was an injured person and that
 her injuries were caused by the negligence or wrongful act

 of another. See § 38-27-101(1), (4).
Accordingly, this argument does not establish the relevance
 of the discovery at issue.

 4.
Relevance to Net Amount Payable and Total Recovery

 ¶45
 Finally, with respect to Centura's claim that it requires
 discovery regarding the sums that Garcia recovered from the
 tortfeasor and the amounts, if any, due to any attorneys whom
 she retained in connection with such claims, so that it could
 calculate the net amount payable to Garcia (which is the
 amount against which Centura may assert a lien), the facts of
 this case and Garcia's claims belie this assertion.

 ¶46
 As Centura correctly observes, section 38-27-101(4) provides
 that after a hospital complies with the lien statute's
 notice and other requirements, it has a lien for its
 reasonable and necessary charges "upon the net amount
 payable to the injured person . . . out of the total amount
 of any recovery or sum had or collected, or to be collected,
 whether by judgment, settlement, or compromise, by the person
 . . . as damages on account of the injuries."

 ¶47
 Centura, however, ignores the fact that it asserted a lien in
 an amount certain (here, $2,170.35), and if Garcia
 establishes that Centura violated the hospital lien statute
(as, for example, by filing the lien before first billing
 Medicare for the services provided to Garcia), then Garcia is
 entitled to twice the amount of that asserted lien. §
 38-27-101(7).

 ¶48
 Accordingly, the sums to which Garcia (and the other class
 members) would be entitled upon proof of such a violation of
 the lien statute in no way turn on the amounts against which
 Centura could have asserted liens absent the alleged
 statutory violations. They are, instead, a matter of simple
 math: two times the amount of the asserted lien. The net
 amount payable to Garcia and the other class members and the
 total amounts that they recovered from their tortfeasors is
 therefore irrelevant to any issue in this case.

 ¶49
We thus conclude that the discovery requests at issue are not
 relevant to the claim or defense of any party and are not
 proportional to the needs of this case, and therefore, the
 district court abused its discretion in ordering Garcia to
 respond to such discovery requests. In light of this
 determination, we need not address Garcia's contention
 that the district court did not comply with our remand order.
Nor need we proceed to perform the balancing test set forth
 in District Court, 256 P.3d at 691-92, to assess the
 discoverability of any confidential information included
 within the scope of the requested discovery.

 III.
Conclusion

 ¶50
 For these reasons, we conclude that the district court abused
 its discretion in ordering the discovery at issue in this
 case and, therefore, Garcia is not required to respond to
 that discovery.

 ¶51
 Accordingly, we make our order to show cause absolute, and we
 remand this case to the district court for further
 proceedings consistent with this opinion.